GREENBLATT ET AL. *v.* TONEY SCHLOSS PROPERTIES CORPORATION

[No. 320, September Term, 1963.]

10

*Decided May 6, 1964.*

The cause was argued before BRUNE, C. J., and HAMMOND, HORNEY, MARBURY and SYBERT, JJ.

*William H. Engelman,* with whom was *Sol C. Berenholtz* on the brief, for the appellants.

*W. Lee Harrison,* with whom was *Richard C. Murray* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

The Zoning Commissioner of Baltimore County refused to reclassify some twenty-one acres of land east of Stevenson Road between the Beltway on the south and Keyser Road on the north from R. 40 to R. 20.[1] The Board of Appeals, only two members sitting, granted the reclassification and the Circuit Court affirmed. The protesting neighbors appealed to this Court.

When the area underwent a comprehensive rezoning in 1957, the tract in question was part of a larger holding of some ninety acres. The western boundary line of the larger tract was made a dividing line between R. 40 zoning and R. 20 zoning; almost all, if not all, of the land between that boundary line and Stevenson Road to the west was put in the R. 20 classification and almost all, if not all, of the land to the east of that boundary line to Greenspring Avenue was zoned R. 40. The owner of the ninety acres sold it after the comprehensive rezoning to a developer who built houses on lots of at least forty thousand square feet, as required by the R. 40 zoning, to the north, east and south of the tract here involved. The developer platted the twenty-one acres into nine lots, each containing forty thousand square feet, or more, and reproduced the plat in a sales brochure used to sell lots under the legend "one acre homesites." None of the nine lots was sold or built on by the developer.

The original owner found it necessary to foreclose a purchase money mortgage which the developer had given and reacquired the twenty-one acres here in question at the foreclosure sale. It has been unsuccessful in selling the land again and, believing it could sell it to the owner of the land to the west for de-

---

1. R. 40 and R. 20 zones differ only in respect to the size of the lot, R. 40 requiring a minimum of 40,000 square feet, and R. 20 a minimum of 20,000 square feet. Each is a single family dwelling classification. Some of the homes recently constructed on R. 20 lots near the subject property cost $70,000 to build.

velopment in half-acre lots, sought to have it reclassified to an R. 20 zone.

In its application to the Zoning Commissioner, the owner justified the rezoning sought on the ground that "access from the subject property is through R. 20 land due to the construction of the Baltimore Beltway which beltway serves as a logical barrier between R. 20 land and R. 40 land * * *." The Zoning Commissioner's denial of reclassification was because, in his opinion, "the petitioner's land rightfully belongs in the 'R. 40' Zone. The area in question is a very definite part of the existing 'R. 40' development. * * * The original map is not in error."

On appeal to the Board, the change from R. 40 to R. 20 was sought to be justified on the ground that the 1957 map was in error.

The testimony that there had been error in zoning the twenty-one acres R. 40 in the 1957 comprehensive rezoning came from the Deputy Director of Planning of Baltimore County. His opinion, however, was entitled to no more force and effect than the reasons he said underlay it. On direct examination he testified only that because there was no access by road to the property except through a development of R. 20 houses and because a difference in topography and a drainage course separate the property from the large R. 40 area to the east, it was error in 1957 to have zoned the tract other than R. 20. On cross-examination, he said that in 1957 the Planning Board had thought the property line to be an appropriate division between the R. 20 zoning to the west and the R. 40 zoning to the east, but that the manner in which street and lot patterns had been worked out in actuality "now leaves the subject property, related more specifically to the area that is zoned R. 20 than it is to the area that is zoned R. 40." The witness admitted frankly that the land could be developed for either R. 20 use or R. 40 use (as was contemplated when it was zoned), as well as that "it is a fairly normal thing to go [speaking of access] from smaller lots to larger lots," that this type of access is quite frequent, and that this situation would not of itself create an error in the map.

The Board of Appeals in its opinion said the reclassification

would be "logical" since the drainage course "is a far more natural boundary" than the straight property line used in 1957. The Board went on to point out that it was conceded there had been no change in the neighborhood and said it did not feel "that the granting of this particular reclassification can be harmful in itself" — but that "it grants the reclassification with 'tongue-in-cheek' for fear that others may seek to reclassify other properties on this Land Use Map using this particular reclassification as a basis for their desired reclassification." The Board said, entirely rightly we think, that "[s]imply because a piece of ground must be reached by driving through another zoning classification is certainly not sufficient reason to reclassify the landlocked parcel to the same classification as the property that has been used to gain entrance" and then, almost immediately thereafter, concluded:

> "The testimony of Mr. Gavrelis that the stream and ravine is the natural boundary line, and the fact that there can be no ingress and egress to the subject property from the 'R. 40' properties on the east and on the north, are the paramount reasons for the Board granting the subject reclassification."

It is our opinion that under the controlling standards the Board had no right to grant the reclassification. As both sides agree, the well-established rule in Maryland is that "there is a strong presumption of the correctness of original zoning and of comprehensive rezoning, and that to sustain a piecemeal change therefrom, there must be strong evidence of mistake in the original zoning or in the comprehensive rezoning or else of a substantial change in conditions." *Shadynook Imp. Assn. v. Molloy,* 232 Md. 265, 269-270, and cases cited. They also agree that there has been no change in conditions in the area. In our view, no probative evidence of error in the zoning of the property in 1957 was presented to the Board. The most that the applicant for change showed and all that the Board decided was that the drainage course would be a logical place to draw the line because the actual development of the R. 40 and R. 20 areas nearest the property had been such as to make the

tract in question more compatible with its neighboring land to the west than with the land to the east. Assuming this to be true, it does not show original error. It was logical and appropriate to use the property line as a boundary in 1957. Perhaps ideal or even more nearly ideal planning in 1957 would have foreseen the way in which the developers would put in streets and lots and have enabled the zoning legislators to use the drainage course as a preferable boundary, but this does not mean that it was then error in a legal sense to have used the property line. "It hardly needs to be said again that in zoning a line of demarcation must be drawn somewhere," (*Shadynook, supra*, at p. 272 of 232 Md.), and the use in 1957 of a property line which was then proper and appropriate (as is shown by the fact that in 1964, as has been true from 1957 on, the property can be as well developed for R. 40 use as for R. 20 use, according to the uncontradicted testimony) was not error simply because it is now revealed that subsequent events (the manner of development of contiguous lands) have made it more logical or desirable or economically profitable that the division line be a natural contour line.

Its rough topography will limit the number of lots into which the tract can be divided whether it remains R. 40 or is reclassified to R. 20. Only nine one acre lots or thirteen half-acre lots can be carved from the twenty-one acres. The owners urge that it will be economically more profitable to them and, as a practical matter, more feasible to sell the land for R. 20 use. This affords no basis in law for a change in zoning status. No more do the mere facts that it would be logical or do no harm to grant the change. The case law requires strong evidence of original error or substantial change in conditions to justify piecemeal reclassification. The owners could not go far enough in this case towards meeting that heavy burden even to establish a question or basis for debate. The testimony they adduced was legally insufficient to support a finding of error by the Board of Appeals, and the case is controlled by *Shadynook* where five alleged reasons given to show original error persuaded the Board and the Circuit Court of original error but were held by this Court to be so unsubstantial as to be legally without force.

The appellees rely on *Overton v. Co. Commissioners*, 225 Md. 212, in which a reclassification was upheld on testimony and facts which bear a superficial resemblance to those in the case at bar. In *Overton,* however, the evidence as to the complete unsuitability of the land for the use for which it was zoned originally had definite probative force and made the matter to be decided by the zoning authorities at least fairly debatable. Here we think that, as in *Shadynook,* there was nothing to debate.

*Order reversed, with costs.*