BOARD OF COUNTY COMMISSIONERS OF
HOWARD COUNTY *v.* TURF VALLEY
ASSOCIATES

[No. 91, September Term, 1967.]

 

██ 

 

 

*Decided October 10, 1967.*

*Motion for rehearing filed November 8, 1967; denied November 16, 1967.*

558

The cause was argued before HAMMOND, C. J., and HOR-NEY, MARBURY, OPPENHEIMER, McWILLIAMS and FINAN, JJ., and RUTLEDGE, J., Associate Judge of the Fourth Judicial Circuit, specially assigned.

*Charles E. Hogg* for appellant.

*Bernard F. Goldberg* for appellee.

OPPENHEIMER, J., delivered the opinion of the Court.

The basic question in this zoning case is whether an application for rezoning a large tract of land from a one and two family residential district into garden-type apartments and shopping center districts is to be determined by the principles applicable to a request for spot-rezoning or by the approach this Court has adopted in respect of the placement of a particular property into a "floating zone."

The appellee is the owner of some 730 acres in Howard County, bounded on the south by U. S. Route 40, a dual highway, on the north by an interstate highway under construction and on the west and east, respectively, by Marriottsville and Turf Valley Roads. All of the property (except for 27 acres in the northeast corner of Route 40 and Marriottsville Road) is zoned R-20 (Residential—one or two families) under the Howard County Zoning Map adopted in May, 1961. The appellee petitioned the Board of County Commissioners to amend the Zoning Map by reclassifying 149½ acres (later reduced to 140) of the property to the R-A-1 (Garden-type Apartments) and 40 acres to the S-C (Shopping Center) Districts. Most of the remainder of the property is used for two 18-hole golf courses, a large clubhouse, a swimming pool and other club facilities. The adjacent land contains small farms and scattered residential developments. All three of the classifications

here involved, R-20, R-A-1, and S-C, were established by the 1961 Comprehensive Zoning Map.

The Planning Commission, in a comprehensive report, recommended denial of the application. At the hearing before the Board, the appellee endeavored to show that its application envisaged a "planned community." Concededly however, such a community as a zoning classification, under the Howard County zoning regulation, is restricted to a development of at least 2500 contiguous acres under single control or ownership. The planned community of Columbia has been authorized under this regulation as a New Town District, but the appellee's property, because of its restricted size, does not qualify. The appellee offered expert testimony to the effect that the proposed rezoning would not adversely affect the surrounding properties and would be compatible with the General Plan. Some testimony was also offered as to changes in the neighborhood after the original comprehensive zoning. No property owners testified in opposition to the granting of the application. The Board denied the application. It held that it was required to apply the traditional test of "change" or "mistake", and found that there was no mistake in the Zoning Map as to the property and that there were not such subsequent changes in the neighborhood as would require the granting of the petition. The Board adopted the following reasons for denial contained in the report of the Planning Commission:

"1. The requested changes are not in accordance with the General Plan.

"2. Public sewer facilities do not serve the area and may not be expected to do so for several years.

"3. The reliance upon the golf course as 'open-spaces' may be practically predictable but it is illusory in a legal sense."

There is no statutory appeal in Howard County from a zoning decision of the Board. In accordance with the procedure in that county, the appellee filed a bill in the Circuit Court, alleging that the Board's refusal to rezone the property in accordance with the application was discriminatory, arbitrary and illegal, and without any supporting evidence. The bill asked

560

that the Board be enjoined from interfering with the requested uses. The Board demurred. The appellee, under Maryland Rule 502, asked the court to rule, as a matter of law, that the rule of "mistake-change in conditions" did not apply to the application, and that the applicable rule was that the petition was analogous to a request for a special exception and therefore should be granted upon a showing that the development would be in general harmony with the zoning plan and would not adversely affect the neighboring properties. The court below granted the motion, and, on the record before the Board, held that under the principles applicable to a request for a special exception, the Board had acted arbitrarily in refusing the application. We hold that the learned Chancellor erred in ruling that the mistake-change rule was inapplicable, and in granting the injunction.

The decision of the lower court reversing the Board is based upon its application to the situation of the "analogous to a special exception" doctrine in place of the "mistake" or "change" principle. This Court has invoked the analogy of a special exception in cases dealing with the placement of a "floating zone." However, no floating zone is involved in this case. Howard County, in a regulation adopted since its comprehensive zoning, has authorized a New Town District which apparently embodies the concept of a floating zone. But the application of the New Town District is restricted to much larger developments than the property here involved. It is not for the courts to broaden the scope of the legislative determination.

The application was to change the property involved from the residential classification, permitting residences for one or two families, to classifications permitting garden-type apartments and a shopping center. The R-A-1 Districts, under which garden-type apartments are permitted, have been extant since the 1961 comprehensive zoning. This Court has repeatedly held that attempts to change property zoned for the use of one or two family residential use into an existing apartment house classification constitutes spot zoning and can not be sustained in the absence of substantial proof of mistake in the original zoning or subsequent change in conditions. *E.g., Gorin v. Board of Co. Comm'rs,* 244 Md. 106, 223 A. 2d 237 (1966) ; *Board of*

*Co. Comm'rs v. Kines,* 239 Md. 119, 124-25, 210 A. 2d 367 (1964) ; *Pahl v. County Bd. of Appeals,* 237 Md. 294, 297, 206 A. 2d 245 (1964), and cases therein cited.

The application to change 40 acres of the property to the shopping center classification is obviously dependent upon the granting of the reclassification of the 140 acres to the apartment house use. We have held that an increase in housing units and the consequent growth in population could reasonably lead to need for additional commercial zoning in the area to supply the needs of the increased population. *Bosley v. Hospital,* 246 Md. 197, 204, 227 A. 2d 746 (1967), and have upheld the action of a zoning board in permitting the creation of a small retail district within a residential area when there was substantial evidence that the proposed use was for the accommodation and convenience of the residents and in the public interest. *MacDonald v. County Board,* 238 Md. 549, 557, 210 A. 2d 325 (1965). Here, however, the need for the shopping center was practically conditioned upon the increased population to be brought about by the erection of the apartment houses on the 140 acre tract.

The considerations here involved differ essentially from those presented in the placement of a floating zone. A "floating zone" was defined by Judge Hammond (later Chief Judge) for the Court, in *The Chatham Corp. v. Beltram,* 243 Md. 138, 149-50, 220 A. 2d 589 (1966), as follows :

> "A floating zone is a special detailed use district of undetermined location, a district in which the proposed kind, location, size, and form of structures must be pre-approved, and which, like a special exception use, is legislatively pre-deemed compatible with the areas in which it may thereafter be located on a particular application, provided specified standards are gratified and actual incompatibility is not revealed. See Reno, *Non-Euclidean Zoning: The Use of the Floating Zone,* 23 Md.L.Rev. 105 (1963), and *Beall v. Montgomery County Council,* [240 Md. 77, 212 A. 2d 751 (1965)]."

The concept of a floating zone was recognized in *Huff v. Board of Zoning Appeals,* 214 Md. 48, 133 A. 2d 83 (1957), and

*Costello v. Sieling,* 223 Md. 24, 161 A. 2d 824 (1960), although, as so often occurs in the case-to-case evolvement of a legal principle, the approach was worked out before the concept was formalized. The analogy of special exception uses has been applied to zoning actions dealing with the placement of a floating zone. *Bujno v. Montgomery Co. Council,* 243 Md. 110, 220 A. 2d 126 (1966) ; *Chatham, supra; Beall, supra,* and authorities therein cited. But this analogy is not applicable to situations like the one before us, where the governing application is only to change one existing use, established under a comprehensive zoning plan, to another existing, established use, where the result would be a spot rezoning and where no original mistake or subsequent change has been established. To apply the floating zone approach to such situations would be in effect, either to open the floodgates of uncontrolled administrative discretion or to authorize the courts to zone and to rezone.

That the law develops does not mean it has discarded basic principles. The recognition of a new concept in public planning and legislation as to the use of land does not entail the transfer of the primary responsibility in zoning from the legislative or administrative authorities to the courts. The application of the "analogous to a special exception" approach to the placement of a floating zone does not mean that the "change" or "mistake" rule is no longer applicable to petitions for spot rezoning. We find that the "change" or "mistake" rule applies to this case.

The appellee contends that, even though the mistake or change rule is applicable, it has shown sufficient change to warrant the rezoning. We do not agree. The issue was, at the least, fairly debatable. The burden was upon the appellee to show change, and, while no property owners protested the granting of the application, the Board had before it the report of the Planning Council and the reasons therein given for denying the application. That report of itself, constituted probative evidence for the denial of the petition. *Smith Bros. v. Montgomery County,* 246 Md. 1, 227 A. 2d 1 (1967) ; *Martin v. Board,* 244 Md. 728, 225 A. 2d 264 (1967) ; *Tauber v. Montgomery County Council,* 244 Md. 332, 223 A. 2d 615 (1966).

> *Decree reversed; costs to be paid by appellee.*