FRANCE, ET AL. *v.* SHAPIRO, ET AL.

[No. 708, September Term, 1966.]

*Decided January 3, 1968.*

*Motion for rehearing filed February 1, 1968; denied February 5, 1968.*

The cause was argued before HAMMOND, C. J., HORNEY, MARBURY, McWILLIAMS and SINGLEY, JJ.

*Arnold Fleischmann* for appellants.

*A. Owen Hennegan, Jr.,* with whom was *Samuel Kimmel* on the brief, for appellees.

SINGLEY, J., delivered the opinion of the Court.

This case comes to us on appeal from an order of the Circuit Court for Baltimore County entered 19 January 1967, affirming an order of the County Board of Appeals of Baltimore County dated 24 June 1966, granting the petition of Israel D. Shapiro and Joseph W. Shapiro, appellees herein, for the rezoning of 27.065 acres of land on the north side of Old Court Road in the Third Election District of Baltimore County.

The opinion of the County Board of Appeals suggested that the opening paragraph of the opinion filed for this Court by Judge McWilliams in *Beth Tfiloh Congregation of Baltimore City v. Blum,* 242 Md. 84, 218 A. 2d 29 (1966) could well have been incorporated in the opinion of the Board. This paragraph reads in part as follows:

> "Unless forewarned, no Maryland lawyer whose practice embraces zoning matters would be able to read this opinion and the briefs without experiencing a feeling of *déjà vu.* Eventually, however, the familiar names, places, and principles of law would fall into place and the reader then would realize that, in reality, he was revisiting *Finney v. Halle,* 241 Md. 224, 216 A. 2d 530 (1966). The property in the case at bar is less than a mile to the east of the Halle property. Both properties are in the 3rd Election District of Bal-

timore County and both abut the Baltimore Beltway. The zoning classification sought was the same in each case. The same attorneys opposed each other. The same witnesses (with minor exceptions) testified in both cases. The Board of Appeals rezoned both properties for substantially the same reasons. In each case there were appeals first to the Circuit Court for Baltimore County and then to this Court."

Under our view of this case, the trilogy commenced by *Halle* and continued by *Beth T'filoh* has been concluded by the case before us.

A Comprehensive Zoning Map for most of the Third District of Baltimore County was adopted on 16 January 1957, which classified the property which was the subject of litigation in *Halle,* the property which was the subject of litigation in *Beth T'filoh,* and the property which is the subject of the present appeal as R-20 (residence, one family, 20,000 square foot lot) and R-40 (residence, one family, 40,000 square foot lot). At the time of the adoption of the Comprehensive Zoning Map, the proposed location of the Baltimore County Beltway in the area was generally known, but the plans and design of the Beltway interchanges to be located at Stevenson Road and Park Heights Avenue were not approved until 15 April 1959, a construction contract was not awarded until 23 January 1961, and the Beltway itself was not in general use in the area until 1962.

The property which was involved in *Halle* consisted of 49.672 acres, being all that remained of Pillbox Farm, originally a tract of 69 acres improved by a substantial fieldstone residence, a tenant house and barn. The construction of the Beltway completely destroyed the house, the tenant house, the barn and several other outbuildings, leaving to the south of the Beltway an unimproved parcel without access which was acquired by the State Roads Commission; and to the north of the Beltway, left the 49.672 acre tract which was the subject of an application for rezoning from R-20 and R-40 to R-A (residence—apartment) and for a special exception for elevator apartments. The requested reclassifications were granted by the County Board of Appeals; the reclassification to R-A was affirmed by the order

of the circuit court but the granting of the special exception was reversed. The court order was in turn affirmed on appeal, insofar as it related to the requested reclassification, but was reversed (so as to affirm the County Board of Appeals) as to the granting of the special exception for the construction of high-rise apartments.

The rationale adopted by the County Board of Appeals and by the lower court to justify the granting of the reclassification was that there had been sufficient changes in the character of the neighborhood since the adoption of the Comprehensive Zoning Map of 16 January 1957 to support the requested rezoning. We held, on review, that the issue before the Board was fairly debatable and that the result should not be disturbed by us. In a dissenting opinion filed by Judge (now Chief Judge) Hammond, it was pointed out that the only substantial change which had occurred in the character of the neighborhood since the adoption of the Comprehensive Zoning Map on 16 January 1957 had been the determination of the precise location of the access and exit ramps at Park Heights Avenue and Stevenson Road.

*Halle* was decided on 2 February 1966 and was immediately followed by the opinion filed on 29 March in *Beth Tfiloh*. In 1961 the Beth Tfiloh congregation had purchased a tract of 57.25 acres extending north from Old Court Road to the Beltway, adjoined on the west by a development known as Dumbarton Heights. The land was purchased as a location for a synagogue complex, consisting of a sanctuary, a school, a social center and a library, all of which were designed by Morris Lapidus, a distinguished American architect of international reputation. On 21 March 1963, the congregation entered into a contract of sale with the developer of Dumbarton Heights for the sale of the northernmost 20 acres of the site, on which the developer was to erect a number of apartment units designed by Mr. Lapidus, to which members of the congregation were to be given a limited priority as prospective tenants. This naturally required a change in the zoning classification from R-20 and R-40 to R-A (residence—apartment). Included in the application was a request for a special exception for a high-rise apartment building. Both the reclassification and the special exception were denied by the Zoning Commissioner; an appeal was

taken to the County Board of Appeals, which, on 25 June 1964, granted the rezoning but denied the special exception, basing its determination on changes which had occurred in the neighborhood and "the needs and desires of the Beth Tfiloh Congregation to accommodate its members." On appeal to the circuit court, the determination of the County Board of Appeals was reversed. The lower court's opinion, filed on 14 June 1965, found that an extension of utility lines for water and sewage into the area made possible changes in use but did not constitute a change in character and that while the construction of the Beltway had had a substantial impact, from a legal point of view this was not the kind of change that justifies reclassification.

On appeal to this Court, the order of the circuit court was reversed and the requested reclassification (but not the special exception) was granted, primarily on the ground that our opinion in the *Halle* case had not been available to the Court below.

The case at bar involves a tract of 27½ acres, roughly rectangular in shape, fronting on the north side of Old Court Road for a distance of 577 feet with an irregular depth of between 2125 feet on the east and 2190 feet on the west to the Beltway. On the east, it is bounded by property owned by Annita France, one of the appellants, which consists of an estate of some 140 acres used primarily for residential and agricultural purposes, and zoned R-40. On the west the appellees' land is contiguous to the property owned by the Beth Tfiloh congregation and to the adjacent property reclassified R-A in the *Beth Tfiloh* case. Across Old Court Road is a 55-acre tract owned since 1954 by the appellee, Joseph W. Shapiro, improved by a residence and zoned R-40. Mr. Shapiro testified that he purchased the tract which is the subject of the present appeal on 12 January 1962, as an investment and also to protect his own home, which is located on the 55-acre tract directly across Old Court Road. It should be noted, however, that the record discloses that Mr. Shapiro, subsequent to the filing of the petition in the instant case, filed an application for a reclassification of the 55-acre parcel from R-40 to R-A.

The petition for reclassification of the tract which is the subject of this appeal was originally filed with the Zoning Com-

missioner of Baltimore County on 31 July 1963, seeking a change from R-40 and R-20 to R-A and a special exception for elevator apartment buildings to permit the construction of three 16 story apartment buildings, containing 576 units. On 20 September 1963, the staff recommended the denial of the petition for reclassification and for the special exception; and on 3 October 1963, an order was issued by the Deputy Zoning Commissioner in conformity with the staff recommendation. An appeal was taken to the County Board of Appeals on 28 October 1963 and prosecuted on the theory that changes in the character of the neighborhood and an error in original zoning would support the reclassification requested.

Hearings were commenced on 30 June 1964 and were finally concluded on 31 March 1966, the delay apparently having been occasioned by the desire of counsel to continue the case until the filing of the *Beth Tfiloh* opinion. On 24 June 1966, the County Board of Appeals granted the reclassification but denied the special exception.

While the Board referred to the expansion of utility services and the construction of the Beltway as evidence of changes in the area, greater emphasis was laid on the development of the Beth Tfiloh complex. In its opinion, the Board said:

"The Board certainly agrees that a line of demarcation must be drawn somewhere and obviously all of the available vacant land in the immediate area, which is in excess of 200 acres, should not be zoned for apartments. However, we feel that if a line is to be drawn it properly should be drawn on the east boundary of the subject tract. The Board feels that we are constrained to follow the Court's Opinion in *Beth Tfiloh v. Blum* as all of the same factors are present in this case that were present in the *Beth Tfiloh* case. In the instant case we feel that the numerous and substantial changes in the neighborhood, and particularly the construction of the synagogue, school, and apartment complex on the Beth Tfiloh tract, which is immediately adjacent, warrant the reclassification requested here. In arriving at our decision to reclassify this property to

apartment zoning we do not intend in any way to commit other properties in the area to be likewise reclassified, and any future petitions must stand on their own merit."

On 22 July 1966 the appellants entered an appeal to the Circuit Court for Baltimore County; the appellees were permitted to intervene by appropriate order; and by order entered 19 January 1967, the circuit court affirmed the action of the Baltimore County Board of Appeals. In its opinion, which followed the Board's approach, the court said:

"I cannot fail to agree with what Mr. Hennegan has pointed out, that a large complex of a place of religious worship, a school, a center, with the necessary large parking areas, is not what was in contemplation when the Beth Tfiloh area was zoned R-40. It seems to me that, considering the fact that the Board denied the application for a special exception for a high rise apartment building, considering that, it seems to me that going eastwardly, or for that matter westwardly from the Beth Tfiloh property a zoning of R.A. is a proper transition zoning between a large area, which necessarily must rely upon large numbers of people to use it, than a zoning which is in the R-40 or R-20 category for single family dwellings.

"In the light of the testimony of Mr. Willemain, and in the light of, as Mr. Fleischmann very candidly concedes, the conflict in the testimony as to traffic hazard, and in the light of the Court of Appeals decision in the Beth Tfiloh case, and also considering, which was a most unusual case, and which I don't believe was cited in the memoranda, the Bonnie View case, [*Bonnie View Club v. Glass*, 242 Md. 46, 217 A. 2d 647 (1966)] over there on Smith Avenue where the old abandoned copper mines were, in the light of the reasoning of the Court of Appeals in all of those cases, but particularly considering that the Court of Appeals was dealing in the Bonnie View case, in the Halle case, in the Beth Tfiloh case, with properties which

"were geographically fairly close together, I can't find from this record, from these exhibits, and considering what the Court of Appeals has told me I must consider, I can't find that the Board of Appeals acted in an arbitrary, capricious or illegal fashion when it granted this application, and for those inadequately expressed reasons, gentlemen, the action of the Board will be affirmed."

We have consistently held that "there is a strong presumption of the correctness of original zoning and of comprehensive rezoning, and that to sustain a piecemeal change therefrom, there must be strong evidence of mistake in the original zoning or in the comprehensive rezoning or else a substantial change in conditions." *Greenblatt v. Toney Schloss Properties Corp.*, 235 Md. 9, 13, 200 A. 2d 70 (1964) citing *Shadynook Imp. Assn. v. Molloy*, 232 Md. 265, 192 A. 2d 502 (1963) and cases there cited.

We have also held that "the Courts may not substitute their judgment for that of the Board when the Board's decision is supported by substantial evidence and the issue before the Board was fairly debatable." *Bosley v. Hospital for Consumptives*, 246 Md. 197, 204, 227 A. 2d 746 (1967) citing *Vogel v. McCosh*, 242 Md. 371, 219 A. 2d 89 (1966). See also *Agneslane, Inc. v. Lucas*, 247 Md. 612, 233 A. 2d 757 (1967).

However, the "[C]ourt will, where the record is so devoid of substantial supporting facts as to be incapable of raising a debatable issue, declare the legislative or administrative action invalid." *Baker v. Montgomery County Council*, 241 Md. 178, 186, 215 A. 2d 831 (1966) citing *Jobar Corp. v. Rodgers Forge*, 236 Md. 106, 202 A. 2d 612 (1965) ; *Levitt and Sons v. Board of County Commissioners*, 233 Md. 186, 195 A. 2d 723 (1963).

After a review of testimony offered in behalf of both the appellants and the appellees in the hearing before the Baltimore County Board of Appeals, it is our view that the record offers insubstantial support for the contention that the requested reclassification is justified by changes in the character of the neighborhood or a mistake in original zoning. It is our view that the reliance placed by the Board and by the court below

on the development of the Beth Tfiloh site as a basis for granting the requested rezoning was clearly erroneous as a matter of law. It is well recognized that the location in a residential zone of improvements of a character permitted by the ordinance, even although not necessarily compatible with a residential development, is not the type of change of character of a neighborhood which will justify reclassification. *Agneslane, Inc. v. Lucas, supra* (fire house) ; *Baker v. Montgomery County Council, supra* (school) ; *Levy v. 7 Slade, Inc.,* 234 Md. 145, 198 A. 2d 267 (1964) (synagogue, school, parking lot, powerhouse) ; *Kaslow v. Mayor and Council of Rockville,* 236 Md. 159, 202 A. 2d 638 (1964) (church) ; *Montgomery County v. Ertter,* 233 Md. 414, 197 A. 2d 135 (1964) (armory, motor shed, paved area). But compare *Meginniss v. Trustees of the Sheppard and Enoch Pratt Hospital,* 246 Md. 704, 229 A. 2d 417 (1967), which involved an intensification of institutional uses without an insulating line of demarcation.

Nor should an improvement in water and sewage facilities, standing alone, be taken as a change of conditions affecting the neighborhood. *MacDonald v. County Board,* 238 Md. 549, 556, 210 A. 2d 325 (1965). But compare *MacDonald* with *Rohde v. County Board of Appeals for Baltimore County,* 234 Md. 259, 199 A. 2d 216 (1964) ; and with *White v. County Board of Appeals,* 219 Md. 136, 148 A. 2d 420 (1959).

We did not intend *Halle* to be taken as authority for the proposition that all property adjoining the Beltway, whether or not adversely affected, had undergone so substantial a change as to be a candidate for rezoning. *Halle,* on its facts, was an extreme case, where the construction of the Beltway severed the property, involved the destruction of the improvements, and left a tract for which the requested reclassification was justified. *Halle* should be compared with *Greenblatt v. Toney Schloss Properties Corporation,* 235 Md. 9, 200 A. 2d 70 (1964), where a change in access to the subject property caused solely by the Beltway was held to be insufficient change to support a reclassification from R-40 to R-20, even though the tract was cut off from other R-40 property and access could be had only through R-20 property.

The appellees also attempt to avail themselves of the result

reached in *Beth T'filoh*. While we were careful to point out that the result in that case was not determined by the needs of the congregation, it is undoubtedly true that the congregation could have accomplished directly the result which our determination of the case permitted it to accomplish by indirection. Putting this another way, the complex erected by a religious institution was a permitted use in a residential zone and would probably not have been regarded as incompatible if it had included provision for the housing of members of the congrgeation. To hold otherwise would be to put in question the right of a college, seminary or convent to make such use of property in the absence of statutory limitation. While this was not a basis for our opinion, it is an aspect of the problem which cannot be overlooked. The fact that the congregation elected to implement its plans through an independent developer under an agreement which maintained aesthetic standards and offered protection to the members of the congregation makes the situation analogous to that of a special exception (which possibly could have been granted under § 502.1 of the County's zoning regulations) and cannot be regarded as spot zoning or as authority for similar utilization under other auspices elsewhere in the area. Under such circumstances, the reclassification of a portion of the Beth Tfiloh site is not such a change as would require the rezoning of an adjacent tract for the same purpose. *Baker v. Montgomery County Council,* 241 Md. 178, 215 A. 2d 831 (1966) ; *Levy v. 7 Slade, Inc.,* 234 Md. 145, 198 A. 2d 267 (1964).

The County Board of Appeals recognizes, and we agree, that a line must be drawn somewhere if an area of some 200 acres located in the heart of a neighborhood of substantial one-family residences is to be protected. The County Board of Appeals suggests that the line be drawn along the east boundary of the property owned by the appellees. It is our view that this is not warranted by the testimony in the case.

The contention with respect to the error or mistake in the original zoning classification was largely supported by the testimony of Mr. Bernard M. Willemain, the former Deputy Director of the County's Planning Commission and now an independent consultant, who gave substantially the same testimony in *Halle* and *Beth Tfiloh*. In substance, Mr. Willemain's testi-

mony in all three cases was the same: that the improvements to be erected if the reclassification were granted would be compatible with the area; that a high-rise apartment would be more desirable than garden apartments; and that the Comprehensive Zoning Map adopted for the Third District on 16 January 1957 was in error because it made no practical provision for apartment development in the area for which there was an increasing demand. On cross examination in the case at bar, Willemain admitted that the area's population had increased only from 3,081 in the year 1950 to an estimated population of 6,395 at 1 January 1963 and identified the substantial apartment development which had already occurred or was in prospect in the neighborhood. This Court was careful to point out that *Halle* was predicated on the change doctrine and that it was unnecessary to consider the question of mistake in original zoning, although a footnote, *Finney v. Halle*, 241 Md. at 236, recognizes: "There is strong evidence in the case which might well have justified a finding of mistake in original zoning by the failure of the County Council to provide for a recognizable need for apartment zoning in January 1957. * * * As we have indicated, it is not necessary to pass on this issue of mistake in original zoning, and we make no holding in regard to it." The Willemain testimony was not a basis for our decision in *Beth Tfiloh* and in view of the development which is in being or will occur partially as a result of our determination in *Halle* and *Beth Tfiloh*, it is our opinion that the Willemain testimony in the instant case lends no support for the contention that there was a mistake in original zoning.

For the reasons stated, it is our conclusion that the issue presented to the County Board of Appeals was not supported by substantial evidence and thus was not fairly debatable; that the requested reclassification should not have been granted; and that the order entered by the court below should be reversed.

*Order reversed, costs to be paid by appellees.*