HUNTER, et al. *v.* BOARD OF COUNTY COMMISSIONERS OF CARROLL COUNTY

[No. 61, September Term, 1968.]

*Decided February 6, 1969.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, McWILLIAMS, FINAN and SMITH, JJ.

*Marker J. Lovell,* with whom was *J. Richard Wilkins* on the brief, for appellants.

*Stanford Hoff,* with whom was *L. Awalt Weller* on the brief, for appellee.

FINAN, J., delivered the opinion of the Court.

On May 23, 1967, the owners of a 300 acre tract of land lying northeast of Taneytown, Carroll County, filed a petition with the County Commissioners of Carroll County to have 150

acres of the land adjacent to Maryland Route 194 and the Pennsylvania Railroad, rezoned from "A" Agricultural to "I-G" General Industrial District. The subject property and the adjacent property for miles in every direction has always been used for farming and was classified "A" Agricultural by Zoning Ordinance No. I-E, of the County Commissioners of Carroll County, effective August 17, 1965, which ordinance was the first and only county-wide zoning ordinance adopted by the County Commissioners, other than an interim ordinance adopted in 1961.

The stated purpose of the application was to permit the Bowerstown Shale Company to erect a plant along the railroad for the manufacture of clay tile products. The County Commissioners referred the application to the Carroll County Planning and Zoning Commission, which on June 27, 1967, recommended the reclassification. There was nothing in either the findings or recommendation of the Commission to the effect that the reclassification would promote the health, safety or general welfare of the public or that it was in harmony with any comprehensive zoning plan. Likewise, no mention was made of any mistake in original zoning or change in the character of the neighborhood. The observation was made that, when the Board of Appeals had approved in June of 1965, the use of another location southeast of Taneytown [approximately 7 miles from the subject property] for the extraction of shale from the land, zoning was granted on the basis that:

> "* * *a location could be found to locate a modern plant facility in reasonable proximity to this location. Natural gas, which is required in large quantities for the terra cotta [pipe] manufacture, is readily available at the subject location *in that it is proposed to be brought south from the Pennsylvania line to the petitioner's property*." (Emphasis supplied.)

A public hearing was held September 6, 1967, at which time many protestants appeared, including the appellants, in opposition to the proposed rezoning. Again, no testimony was adduced as to the rezoning promoting the general welfare or as to mistake in the original zoning or change in the character of the neighborhood.

On September 27, 1967, the County Commissioners, basing their decision on the recommendations and findings of the Planning and Zoning Commission, unanimously approved the reclassification of the property to an "I-G" district. The appellants subsequently filed their bill for a declaratory judgment and injunctive relief requesting that the County Commissioners be restrained from rezoning the property General Industrial District "I-G" and that they be ordered to restore the classification to "A" Agricultural. From the order of the lower court dismissing the bill this appeal was taken.

The lower court being of the opinion that the "I-G" General Industrial Classification was "Euclidian" in character, held that it could not disregard the pertinency of the "change-mistake" rule. Furthermore, the rezoning being in essence "Euclidian," it did not come within the ambit of *Huff v. Board of Zoning Appeals,* 214 Md. 48, 133 A. 2d 83 (1957) or *Beall v. Montgomery County,* 240 Md. 77, 212 A. 2d 751 (1965), relied upon by the appellee.

The court found that the rezoning was not analogous to a special exception, valid spot zoning or a floating zone, within the framework of the decisions of this Court in *Huff, supra,* and *Beall, supra,* to which we would also add, among the many cases of this Court reviewing these categories, *Kramer v. Prince George's County,* 248 Md. 27, 38, 234 A. 2d 589 (1967); *Board v. Turf Valley,* 247 Md. 556, 561, 233 A. 2d 753 (1967); *Knudsen v. Montgomery County Council,* 241 Md. 436, 442, 217 A. 2d 97 (1966); *MacDonald v. County Board,* 238 Md. 549, 556, 210 A. 2d 325 (1965); *Costello v. Sieling,* 223 Md. 24, 29, 161 A. 2d 824 (1960); *Temmink v. Bd. of Zoning Appeals,* 205 Md. 489, 495, 109 A. 2d 85 (1954); *Offutt v. Bd. of Zoning Appeals,* 204 Md. 551, 561, 105 A. 2d 219 (1954); *Ellicott v. City of Baltimore,* 180 Md. 176, 183, 23 A. 2d 649 (1942). From the facts of the case at bar it becomes immediately apparent, as was emphasized by the lower court, that there is a complete lack of compatibility between the rezoned classification and that of the surrounding neighborhood. The absence of any showing of a benefit to the general welfare of the public or to the surrounding neighborhood should also be noted.

Up to this point we are in agreement with the opinion of the lower court, however, we part company with it, in its holding that there was sufficient evidence before the County Commissioners as to mistake in the original zoning and change in the character of the neighborhood, so as to render these matters "fairly debatable," as required by the Maryland cases. See *Agneslane, Inc. v. Lucas,* 247 Md. 612, 233 A. 2d 757 (1967), and cases cited. Cf. *Goucher College v. DeWolfe, et al.,* 251 Md. 638, 248 A. 2d 379 (1968) ; *Ark Readi-Mix Concrete Corporation v. Smith, et al.,* 251 Md. 1, 246 A. 2d 220 (1968).

The same reasons for supporting the contention that there was a mistake in the original zoning, were also used to buttress the claim of change. The lower court stated:

"* * * In addition, this report indicates that there was error in the original zoning by reason of the fact that 'the Planning Commission staff did upon the initiation of a comprehensive plan for the County Zoning Ordinance consider the said area for industrial zoning. However, at that time there appeared very little likelihood that public utilities would be furnished the area so as to make industrial use a reality in the near future.' Obviously this was in error as a proposal for the furnishing of natural gas has already been advanced. Then too, the facts herein are uncontradicted that there are, and have been since the original zoning, adequate rail facilities, road facilities, appropriate open space and sufficient water to establish the zoning sought here. These facilities, without the additional promise of natural gas which will be available upon demand, would seem to be more than adequate to have allowed for "I-G" zoning originally. Furthermore, the Board of Appeals has already granted permission to the applicant for an extractive operation for shale necessary for the operation of a plant such as is contemplated by the Petitioner. The presence of such material in the area should have a bearing on the mistake in the original zoning. Moreover, we think that these facts would also support a determination under paragraph (a)."

As of the time this appeal was argued, the natural gas line referred to in the court's opinion had not yet crossed the Pennsylvania line into Maryland, nor was there any definite indication as to when it might. Certainly, the decision of the legislative body in adopting a comprehensive plan, to exclude industrial zoning in a traditionally agricultural area, cannot be said to have been a mistake, because of the possibility of the adaptability of the farm land to industrial use, the later promise of a gas line for industrial use and shale deposits becoming available in another part of the county.

There was really no evidence as to mistake or error in the original comprehensive zoning ordinance, other than the bland conclusions contained in the report of the Planning Commission's staff, which were incorporated into the court's opinion. In *Miller v. Abrahams,* 239 Md. 263, 211 A. 2d 309 (1965), we said:

> "* * * the prevailing general rule, almost universally followed, is that an expert's opinion is of no greater probative value than the soundness of his reasons given therefore will warrant. * * *." *Id.* at 273.

In a long line of cases this Court has emphasized the strong presumption of correctness which attaches to original zoning and to comprehensive zoning. See *France v. Shapiro,* 248 Md. 335, 236 A. 2d 726 (1968); *Leroux v. Baltimore,* 248 Md. 106, 234 A. 2d 747 (1967); *Bonnie View Club v. Glass,* 242 Md. 46, 217 A. 2d 647 (1966); *Dill v. The Jobar Corporation,* 242 Md. 16, 217 A. 2d 564 (1966); *MacDonald v. County Board,* 238 Md. 549, 210 A. 2d 325 (1965); *Miller v. Abrahams,* 239 Md. 263, 211 A. 2d 309 (1965); *Greenblatt v. Toney Schloss,* 235 Md. 9, 200 A. 2d 70 (1964); *Shadynook Imp. Ass'n v. Molloy,* 232 Md. 265, 192 A. 2d 502 (1963). Certainly, there is no evidence in the case at bar "substantial enough to permit reasoning minds reasonably to conclude that the strong presumption of the correctness of the original zoning * * * has been overcome." *Jobar, supra,* at 23.

The matter of a substantial change in the character of the neighborhood was predicated on the anticipated natural gas pipe line, the record being devoid of any other evidence. This expectation is certainly not sufficient evidence of a substantial

change in the character of the neighborhood as to render the question "reasonably debatable."

We reverse the order of the court below dismissing the appellants' bill for declaratory judgment and injunctive relief.

> *Order reversed, case remanded for the passage of a decree granting the relief prayed for by the appellants, appellee to pay costs.*