BRENBROOK CONSTRUCTION COMPANY
*v.* DAHNE, ET AL.

[No. 336, September Term, 1968.]

*Decided July 1, 1969.*

The cause was argued before HAMMOND, C. J., and MARBURY, BARNES, FINAN and SMITH, JJ.

*R. David Adelberg* and *Fred E. Waldrop* for appellant.

*Harry S. Swartzwelder, Jr.,* for appellees.

BARNES, J., delivered the opinion of the Court.

This appeal is from an order of the Circuit Court for Baltimore County (Barrett, C. J.), dated October 23, 1968, reversing an Order of December 14, 1967 of the County Board of Appeals for Baltimore County (the Board) which had granted the application of the appellant, Brenbrook Construction Company (Brenbrook or

Petitioner) for the rezoning of approximately 17.45 acres of land located on Brenbrook Drive in the Second Election District of Baltimore County (the subject property) from the R-6 (Residence, one or two family, lot area 6000 square feet) zone to the R-A (Residence, Apartments) zone. The protestants before the Board, who were respondents in the lower court and appellees in this Court, are homeowners whose properties are adjacent or nearby the subject property. The lower court was of the opinion that there was no legally sufficient evidence before the Board of either original mistake in the comprehensive zoning or of substantial change in the character of the neighborhood to justify the requested rezoning and, these issues being not fairly debatable, the decision of the Board granting the rezoning was legally arbitrary and capricious. Our review of the record and consideration of the briefs and arguments of the respective parties indicate to us that the decision of Chief Judge Barrett was correct and that the Order of October 23, 1968 should be affirmed. We adopt the opinion of the lower court as the opinion of this Court, as follows:

"As recited in the Board's opinion, the parcel which is the subject of this petition lies south of Meadow Heights Road and is bisected in a north-south direction by Brenbrook Road, a street which is proposed by the County to be a major arterial road carrying traffic in a north-south direction from Liberty Road to McDonogh Road, and in an east-west direction by a 110 foot storm drain area in the center of which is the Scotts Level Branch. The zoning and land use surrounding the property is R-6 for a considerable distance in all directions, but not specifically delineated in the record.

"The subject parcel on which Petitioner [the Appellant, Brenbrook] proposes to erect two hundred forty-two garden type apartment units is part of a larger tract of land purchased by

the Petitioner in 1961. The balance of the original tract, which consists of approximately the same acreage as the subject tract has been developed by the Petitioner in cottage residences which sold for approximately $18,000.00 with the development name of "Chelsea".

"The Court of Appeals has repeatedly held that there is a strong presumption of the correctness of original zoning, *Board of County Commissioners v. Edmonds,* 240 Md. 680, 215 A. 2d 209 (1965); *Shadynook Improvement Association, Inc. v. Molloy,* 232 Md. 265, 192 A. 2d 502 (1963); *Greenblatt v. Toney Schloss Properties Corporation,* 235 Md. 9, 200 A. 2d 70 (1964), and that before a Zoning Board rezones a property there must be substantial evidence either of mistake in original zoning or that the character of the neighborhood has changed to such an extent that such reclassification ought to be granted. *Board of County Commissioners v. Turf Valley Associates,* 247 Md. 556, 233 A. 2d 753 (1967); *Pahl v. County Board of Appeals,* 237 Md. 294, 206 A. 2d 245 (1965).

"Mr. Frederick P. Klaus, called on behalf of the Petitioner, testified as to error:

'I found one thing, as I have found in other cases in this general area, that at the adoption of the land use map properties were zoned for every business use and every residential use except at that time the Planning people omitted to place sufficient land on the land use map for residential apartments.

'As I testified before, in other cases, I found that at that time, and I also find it now, this was a gross error committed in that land use map, and this was borne out by the fact that many petitions have come, through administrative authority, through this Board, and

through the courts, and some have gone to Annapolis, to the Court of Appeals, where this zone has been requested, and in some instances granted, to help correct this fault which was made in 1962.'

"The testimony of Mr. Klaus was the only testimony presented by the Petitioner on the issue of error in original zoning. On cross-examination, however, Mr. Klaus admitted that he did not know what percentage of the land in the western planning was now zoned for apartments. When questioned about the possibility that the percentage of total land area in the western planning area was approaching twenty-two percent in apartment usage, Mr. Klaus in replying that he did not know if this was possible, stated 'I have not made a comprehensive study'.

"Mr. George E. Gavrelis, the Director of Planning in the Baltimore County Office of Planning and Zoning, was called as a witness on behalf of the protestants and testified as follows:

'The subject property is not adjacent to any tract which has zoning for intensive residential usage, nor is it even close to the commercial tracts along Liberty Road or in Randallstown center. The tract enjoys none of the locational advantages which the Planning Board deemed essential for apartment zoning. Even though it lies astride Brenbrook Drive, apartment development here would constitute an incongruous land use—in fact, apartment zoning here from a planning viewpoint would constitute spot zoning. The planning staff is opposed to this petition.'

"Mr. Gavrelis was asked:

'Q. (Mr. Baldwin) In your opinion, is this the R-6 zoning on the property erroneous, Mr.

Gavrelis? A. No, the R-6 zoning is not erroneous. It is correct.

'Q. Are you speaking as of the present time? A. I am speaking as of the present time.

'Q. In your opinion, was it erroneous when it was placed on the property in 1962? A. The placement of R-6 on the map in 1962 was not erroneous.'

"The testimony of Mr. Klaus, standing alone, therefore, does not amount to substantial evidence to support a finding of error in original zoning, and it is to be noted that the Board in its opinion made no such finding of error in original zoning.

"The Board summed up its conclusions in the final paragraph of its Opinion:

'The Board finds that the excessive land development costs make the subject tract unusable in its present zoning, and that there have been sufficient changes in the character of the neighborhood to warrant the reclassification sought by the Petitioner.'

The findings of the Board will be considered in the reverse order.

"The testimony on behalf of the Petitioner on the issue of substantial change in the neighborhood was presented by Mr. Klaus who stated:

'The area generally is one that has gone through a great deal of change, not only in the widening of Liberty Road, to provide proper access to these properties, but also it has gone through change in the fact that a great deal of petitions that have been requested, have been granted, to bring the map up-to-date.

'Q. (Mr. Parker) Change to R-A zoning? A. No, I didn't say to R-A. I said there have been zoning changes to higher density, to correct the errors that were committed in 1962.'

"As far as the widening of Liberty Road is concerned, which is argued by the Appellees as a material change, the testimony indicates that Liberty Road is a third of a mile from the subject tract and as a result is too far from the property in question to constitute change affecting the character of the neighborhood of the subject tract. The Board made no mention of Liberty Road relative to substantial change in its Opinion.

"As to reclassification to R-A zoning, the testimony indicates such were located at a distance of about one and one half miles from the subject property, and thus, were too far from the subject parcel to directly affect the property and such was the Board's opinion.

"The only other testimony bearing on the issue of change in zoning presented by the Record refers to reclassification from R-20 [Residence, one-family, lot area 20,000 square feet] and R-10 [Residence, one-family, lot area 10,000 square feet] residential zoning to R-6 residential zoning, which was the original zoning of the subject tract before the reclassification in this case. Such cannot be considered a substantial change in the character of a neighborhood which is totally in the R-6 classification. See *Baker v. Montgomery County Council*, 241 Md. 178, 215 A. 2d 831 (1966).

"Robert Czaban, a traffic expert, appearing on behalf of the Petitioner, testified that with the development of the subject property Brenbrook Road will be connected as a major collector arterial street to Allenswood Road, which is a major east-west collector street with forty feet of paving on a sixty foot right-of-way, and that the county intends to dead-end McDonogh Road west of the property on both sides of Scotts

Level Branch. When this is done, Brenbrook Road will be the major north-south thoroughfare connecting Liberty Road and McDonogh Road.

"Although the Court of Appeals has held that the Board is entitled to consider projects that are 'reasonably probable of fruition in the foreseeable future', *Jobar Corporation v. Rodgers Forge Community Ass'n, Inc.* 236 Md. 106, 202 A. 2d 612 (1964), such prospective projects must constitute a basic change in the character of the neighborhood. There is no testimony, and the Board makes no finding in its Opinion, that the extension of Brenbrook Road significantly alters the basic character of the neighborhood as did the vast improvements to Stevenson Lane in *Jobar*.

"Mr. Sugarman, the President of Brenbrook Construction Company, testified that it would cost $4,500.00 per lot for the development of the proposed 33 lots of Section 3, Springbrook, and $4,000.00 per lot for the proposed 24 lots of Section 4, which development costs he maintains are basically prohibitive. Although the Petitioner, in effect, in his memorandum, concedes that practical difficulties and economic hardship in the development of the land will not, in itself, justify a change in the classification of property, he urges that it is a factor which must be considered by the zoning authorities.

"In *Helfrich v. Mongelli*, 248 Md. 498, 237 A. 2d 454 (1968), Petitioner-Appellee claimed that he would be forced to expend an estimated $10,500.00 in engineering costs for less than one acre of residential land. For this reason, he contended that the Board would have been guilty of confiscation had it prevented the reclassification to R-A. The Court of Appeals in

reversing the Order of the Circuit Court which affirmed the decision of the Board, stated on page 502-03, 237 A. 2d at 457:

> 'Undoubtedly, the Appellees would enjoy a greater economic gain from the sale or use of the property under an R-A classification; however, this Court has repeatedly held that the fact that rezoning may result in the realization of greater profits from use of the land or that hardship may follow from the retention of the existing classification is not sufficient justification for rezoning.'

See *Board of County Commissioners v. Kay,* 240 Md. 690, 215 A. 2d 206 (1965); *Mayor and City Council of Baltimore v. Borinsky,* 239 Md. 611, 212 A. 2d 508 (1965).

"It has been consistently stated that the courts may not substitute their judgment for that of the Board when the Board's decision is supported by substantial evidence and the issue before the Board was fairly debatable. *Bosley v. Hospital for Consumptives,* 246 Md. 197, 227 A. 2d 746 (1967). See also *Agneslane, Inc. v. Lucas,* 247 Md. 612, 233 A. 2d 757 (1967). However, the Court will, where the record is so devoid of substantial supporting facts as to be incapable of raising a debatable issue, declare the legislative or administrative action invalid. *France v. Shapiro,* 248 Md. 335, 236 A. 2d 726 (1968).

"For the reasons heretofore set forth, this Court finds that the economic difficulties inherent in developing the subject tract under the existing R-6 zoning are not sufficient justification for rezoning. The Court further finds that there is no legally sufficient evidence of original mistake or substantial change in the character of the neighborhood to grant Petitioner's application for reclassification. Therefore, the Board's

decision is found to be arbitrary and lacking, in the record, legally sufficient evidence of change or error in original zoning to sustain it and thus without substantial evidence to present a reasonably debatable question for the discretion of the Board."

> *Order of October 23, 1968 affirmed, the appellant to pay the costs.*