THE WESTVIEW PARK IMPROVEMENT & CIVIC ASSOCIATION, ET AL. *v.* HAYES, ET AL.

[No. 163, September Term, 1969.]

*Decided February 4, 1970.*

576

*Motion for rehearing filed March 2, 1970; denied March 2, 1970.*

The cause was argued before BARNES, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Irving Settleman* for appellants.

*Randolph N. Blair,* with whom was *Johnson Bowie* on the brief, for appellees.

SINGLEY, J., delivered the opinion of the Court.

Since 1955, Mobil Oil Corporation (Mobil) has had a service station on property which it leases at the north-

east corner of Ingleside Avenue and Johnnycake Road in Baltimore County. The station as built is on an irregular lot fronting some 77 feet on Ingleside Avenue and some 104 feet on Johnnycake Road, containing 9,190 square feet. On 15 November 1962, when Baltimore County adopted a comprehensive rezoning map for the area, the site of the Mobil station was zoned B.L. (Business, local), a classification in which a filling station use is permitted under a special exception.

Mobil, having decided in 1965 to enlarge its station from a two-bay to a three-bay operation and to add another pump island, increasing the number of pumps from four to six, obtained an option from Mr. and Mrs. Edward D. Hayes (the Hayes) for the lease of an adjacent tract owned by them, which has a frontage of some 91 feet on Johnnycake Road and a maximum depth of 71 feet, with an area of about 6,468 square feet. Since the Hayes' lot was zoned R.6. (Residential, one and two family dwellings), the option was conditioned on the Hayes' obtaining appropriate rezoning.

On 15 June 1965, the Hayes and Mobil filed a petition with the Zoning Commissioner of Baltimore County for a reclassification of the Hayes lot from R.6 to B.L. with a special exception for a filling station. After a hearing, the Commissioner by order entered 30 July 1965, granted the reclassification and the exception as to an irregularly shaped portion of the Hayes lot, ranging in width from 30 feet on Johnnycake Road to 19 feet in the rear, with a depth of between 61 and 71 feet, immediately adjacent to the Mobil station. In his order, the Commissioner grounded the granting of the reclassification on the premise that there had been error in the original zoning [1] and the special exception on the ground that the requirements of § 502.1 of the County's Zoning Regulations [2] had been

1. The reason the Commissioner gave in support of this finding was that "Testimony at the hearing indicated that the petitioners proved an error in the zoning of the subject property." If there was such testimony, it is not included in the record before us.

2. All references are to Baltimore County Zoning Regulations, 2d Ed. 1964.

met. By an amended order entered on 17 August 1965, a use permit was granted under § 405.3 of the Regulations, permitting the balance of the Hayes lot to be used for parking of cars belonging to customers of the service station.

The Westview Park Improvement and Civic Association and Lloyd E. Wagner and Dennis Smith, the occupants and owners of the house immediately adjacent to the Hayes property (hereafter referred to collectively as "Westview") appealed to the County's Board of Appeals, which affirmed the action of the Zoning Commissioner. Westview then appealed to the Circuit Court for Baltimore County which again affirmed. It is from the latter order that the case comes to us.

For reasons not made entirely clear in the record,[3] more than two years elapsed between the entry of the Commisioner's amended order on 17 August 1965 and the hearing before the County's Board of Appeals on 18 October 1967. Nearly eight months slipped by before the Board of Appeals on 7 June 1968 entered its order affirming the Zoning Commissioner.

In the interval between the entry of the Commissioner's order and the hearing before the Board of Appeals, the County Council had adopted Bill No. 40, which became effective 8 May 1967. Two provisions of this bill were seized upon by the Hayes and Mobil, as lending strength to their case.

The first was an amendment of § 100.1 of the Zoning Regulations, which had previously divided the County into 13 zones. As amended, § 100.1 retained the concept of classification into zones, but superimposed on the zones by § 100.1 B. 2. eight districts, among them a C.N.S. District (Commercial, neighborhood shopping). As amended by the new Bill, § 259.2 B. states the legislative intent:

---

3. Stuart Talbott, Mobil's real estate representative, testified before the Board of Appeals that Baltimore County had imposed a "moratorium" on gasoline filling stations. It is also referred to in the Board's opinion of June 7, 1968.

"C.N.S. District-Commercial, Neighborhood Shopping. C.N.S. Districts may be applied only to certain existing or proposed centers of business activity which are on land zoned B.L. [Business, local], B.M. [Business, major], B.R. [Business, roadside], and/or M.L. [Manufacturing, light], any one of which centers must be intended to: include at least one supermarket or grocery store; have less than 15 retail stores in total; have no department store, junior department store, nor, ordinarily, variety (dime) store; and serve a resident neighborhood population of approximately 10,000 persons or less. A planned shopping center having such characteristics may lie wholly or partially within a C.N.S. District."

The second change was that Bill No. 40 amended § 230.13 of the Regulations, which had theretofore permitted a "filling station" as a special exception in a B.L. zone, by substituting the words "Automotive-service station" for "Filling station." As a corollary, there was substituted for old § 405, which had formerly contained only the most rudimentary requirements for filling stations, a new § 405 setting forth some 13 pages of elaborate and sophisticated regulations. Of importance here are only two: § 405.2 B. 2. permits an automotive-service station by special exception "On an individual site in a C.N.S. District" and § 405.4 A.1. fixes the minimum area of a service station site as the greater of 15,000 square feet or the number of square feet which may be arrived at by multiplying the number of fuel dispensers *and* the number of one-car service bays by 1,500.

Conceiving that the enactment of Bill No. 40 offered another opportunity to buttress their case, at the commencement of the hearing before the Board of Appeals, counsel for Hayes was permitted, over the vigorous objection of Westview's counsel, to amend their petition so that a special exception for an automotive-service station

in a C.N.S. District was sought. At this moment, a procrustean solution began to be applied to what had theretofore been an unremarkable problem of Euclidean zoning.

Between the date of the hearing before the Board of Appeals on 18 October 1967 and the entry of the Board's order on 7 June 1968, a new development occurred. On 15 May 1968, Bill No. 23 was finally enacted by the County Council, approving a "commercial motorways map" and 210 "district maps." [4]

In apparent reliance on this, the Board of Appeals proceeded to reclassify the original site of the Mobil Station as a part of a C.N.S. District; to incorporate that portion of the Hayes' property reclassified by the Zoning Commissioner from R.6. to B.L. as part of a C.N.S. District,[5] and to grant a special exception for an automotive-service station, with a variance under § 405.4 A.1., since the enlarged station would occupy an area of only 13,512 square feet rather than the minimum of 15,000 square feet required by Bill No. 40; and finally, granted a use permit for the parking of automobiles on that portion of the Hayes tract left with R.6. zoning.[6]

The lower court, apparently impressed by the idea that granting the requested rezoning would increase the size of the Mobil site from 9,190 to 13,512 square feet, thus bringing it closer to the minimum of 15,000 square feet prescribed by Bill No. 40, and conceiving that the extension of a conforming use is only limited by considerations of reasonableness,[7] affirmed the order of the Board of Appeals.

As we see the case, this misses the point. Certainly, it

---

4. None of these maps appears in the record before us.

5. A close reading of the Board's order shows that by inadvertence or design, the size of the reclassified parcel was increased.

6. The use permit was subject to certain restrictions, apparently intended to comply with the provisions of § 405.3, as will be later discussed.

7. No authority is cited in support of this proposition. § 104.1 of the Zoning Regulations permits a 25% extension of the ground floor area of a non-conforming *structure*.

is no longer necessary to do more than restate the Maryland rule. There is a strong presumption of the correctness of original zoning and of comprehensive rezoning, *Brenbrook Constr. Co. v. Dahne,* 254 Md. 443, 255 A. 2d 32 (1969) ; *Lambert v. Seabold,* 246 Md. 562, 229 A. 2d 116 (1967) ; *Greenblatt v. Toney Schloss Properties Corp.,* 235 Md. 9, 200 A. 2d 70 (1964) ; *Shadynook Improvement Ass'n, Inc. v. Molloy,* 232 Md. 265, 192 A. 2d 502 (1963) and to sustain a piecemeal change therefrom, there must be strong evidence of mistake in the original zoning or of a substantial change in conditions. *County Comm'rs of Cecil County v. Phillips,* 255 Md. 229, 257 A. 2d 158 (1969) ; *Wells v. Pierpont,* 253 Md. 554, 253 A. 2d 749 (1969) ; *Board of County Comm'rs of Howard County v. Turf Valley Associates,* 247 Md. 556, 233 A. 2d 753 (1967) ; *Pahl v. County Bd. of Appeals of Baltimore County,* 237 Md. 294, 206 A. 2d 245 (1965).

The record before us is devoid of any evidence of change in conditions. The only conceivable argument regarding mistake was the statement of Mobil's representative, Talbott, that it was error in 1962 to restrict the B.L. classification to the site then occupied by the Mobil Station,[8] an unsupported conclusion which seems far from the mark of the "onerous burden" which our prior decisions have imposed on the one seeking a reclassification. *Wells v. Pierpont, supra,* 253 Md. at 557; *Agneslane, Inc. v. Lucas,* 247 Md. 612, 618, 233 A. 2d 757 (1967).

We have consistently held that "the prevailing general rule, almost universally followed, is that an expert's opinion is of no greater probative value than the soundness of his reasons given therefor will warrant." *Miller v. Abrahams,* 239 Md. 263, 273, 211 A. 2d 309 (1965) ; *Hunter v. Bd. of County Comm'rs of Carroll County,* 252 Md.

---

8. Stuart Talbott, Mobil's real estate representative, who testified at the Board of Appeals hearing, said that it was his opinion "that when the original zoning was adopted there was an error in that the depth of commercial property originally proposed at the intersection of Johnnycake and Ingleside, was not sufficiently deep in order to satisfy the demands which today exist on commercial property, due to the tremendous expansion in the general area."

305, 310, 250 A. 2d 81 (1969). What was said by Judge (now Chief Judge) Hammond, speaking for the Court in *Dill v. The Jobar Corp.*, 242 Md. 16, 217 A. 2d 564 (1966), and quoted with approval in *Smith v. Bd. of County Comm'rs of Howard County*, 252 Md. 280, 284, 249 A. 2d 708 (1969) is apposite here:

> "The opinion of an expert that there was error in the original zoning or comprehensive rezoning is not evidence substantial or strong enough to support a finding of original error unless the reasons given by the expert as the basis of his opinion, or other supporting facts relied on by him, are in themselves substantial and strong enough to do so." 242 Md. at 23.

There was no effort to qualify Talbott as an expert, and indeed we doubt that Talbott, who had been in Mobil's real estate department for two and one-half years, would have claimed any particular expertise in the field of zoning. He was not familiar with the depth to which other properties on Ingleside Avenue had been commercially zoned, and admitted on cross-examination that the result of the reclassification would be to orient the station to the Johnnycake Road frontage, an area which is now exclusively residential.

In the absence of any supporting evidence of mistake, the reclassification was arbitrary and capricious and must be declared invalid, *France v. Shapiro*, 248 Md. 335, 236 A. 2d 726 (1968).

Westview mounts an attack on many fronts on the order entered below. Under our view of the case, we need consider only one: Was there legally sufficient evidence to support the granting of a reclassification from an R.6. zone to a B.L. zone? Since we have concluded that there was not, most of the other portions of the Board of Appeals' order tumble like a house of cards.

A C.N.S. District may be imposed, by the terms of § 259.2 B. only on land zoned B.L., B.M., B.R. and/or M.L., which, under our holding, the Hayes property is not. A

special exception for an automotive filling station can be granted under § 405.3 and § 502.1 only in a C.N.S. District, where the Hayes property cannot be, so long as it is zoned R.6.

All that remains is that portion of the order entered by the Board of Appeals which affirmed the action of the Zoning Commissioner in granting a use permit for the parking of automobiles on that portion of the Hayes property which remained R.6. This both the Board and the Commissioner purported to do under § 405.3, which regulates the kinds of repairs which may be performed outside a filling station, and not under § 409.4, which details the circumstances and conditions under which a use permit may be granted for the parking of automobiles in a residential zone. On remand, the case will be returned to the Zoning Commissioner for reconsideration of the issuance of a use permit, and the framing of such a permit, if it be granted, in conformity with the appropriate standards and conditions.

*Order reversed, case remanded to the Circuit Court for the entry of an order reversing the order of the Board of Appeals and for remand to the Zoning Commissioner for further proceedings conformable with this opinion; costs to be paid by the appellees.*