SCHIFF ET AL. *v.* BOARD OF ZONING APPEALS OF BALTIMORE COUNTY ET AL.

[No. 143, October Term, 1954.]

*Decided June 10, 1955.*

. The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Max R. Israelson,* with whom was *Joseph S. Kaufman* on the brief, for appellants.

*Melvin J. Sykes,* with whom were *Charles W. Held, Jr., Emanuel Gorfine* and *John Grason Turnbull* on the brief, for appellees.

HENDERSON, J., delivered the opinion of the Court.

This appeal challenges the validity of an order of the Board of Zoning Appeals of Baltimore County, upheld by the court below, reclassifying a tract of land on the south side of Smith Avenue from "A" Residence to "E" Commercial, in order to permit the construction of a shopping center. The reclassification covered an area of about twenty-five acres, including the ground on

which stand two large airplane hangars and about three acres surrounding them, with a special parking permit on about twenty-two acres, to accommodate some 3,500 cars. We made some allusion to the case in *Zinn v. Board of Zoning Appeals of Baltimore County,* 207 Md. 355, just decided.

Much of the argument in the instant case revolved on the claim of a nonconforming use. The airport was in existence when the Zoning Ordinance was adopted in 1945, but it is conceded that such use was permanently discontinued in 1947. The property was purchased by the appellee, Greenspring Manor, Inc., in 1950. Bendix Radio Corporation has occupied the buildings from time to time since 1951, and has a year to year lease at this time. It uses the buildings as a school for some of its secret radar projects for the Federal Government. We think it is clear that the only use antedating the adoption of the Ordinance was abandoned. Section XI of the Baltimore County Zoning Regulations provides that upon "any attempt to change from such non-conforming use to a different non-conforming use or any discontinuance of such non-conforming use for a period of one year, the right to continue to resume such non-conforming use shall terminate * * *." Cf. *Daniels v. Board of Zoning Appeals,* 205 Md. 36, 39. *Landay v. Zoning Appeals Board,* 173 Md. 460, turned upon a wholly different provision of the Baltimore City Ordinance. It is conceded that the property was originally placed in an "A" Residence district, and that the only change in the neighborhood has been the erection of a number of additional residences, some costing as much as $30,000.

Mr. Miles, a witness for the applicant, admitted that the nonconforming use had been abandoned, but testified he thought it was a mistake to have classified the airport as residential in the beginning, because the buildings could not be converted to a residential use. But we are not prepared to hold that the impossibility of converting specialized structures of this sort to residence use would render untenable the classification of the

tract as residential. Nonconforming uses are usually continued with the expectation that they will eventually disappear. Cf. *Colati v. Jirout*, 186 Md. 652, 657. For a discussion of the problem in other states, see Note, 35 *Va. L. Rev.* 348 (1949). If these cylindrical structures, of cinder blocks and stucco open at both ends, could not be converted to residence use, they could not readily be converted to commercial use either. Mr. Klein testified: "I think the buildings would be too high, knowing the development of shopping centers, I wouldn't say it is impossible to make them attractive aesthetically. It would not lead to the development of an attractive shopping center which should blend in with the character of the general neighborhood." Mr. Gorn, who testified he had not been inside the buildings, said he thought they could be converted into stores by closing in the ends and by partitions. "I would say that this cannot be conceived as an aesthetically valuable shopping center. They wouldn't conceive that, the determination of a shopping center is a specialized field." We have not found in the record any commitment by the owner to utilize the existing structures, and it seems probable that they would be razed in the normal course of erecting a much larger structure for an entirely different purpose. Under all the circumstances we may assume that the present value of the structures is trivial in comparison with the land values.

There was considerable testimony as to the inadequacy of access roads. Smith Avenue was described as a "country road", twenty-one feet wide. The only other means of access is from Clark's Lane, a single lane, unimproved road. There are no arterial roads in the immediate vicinity. There was testimony that this would create a traffic problem. Mr. Dill, Director of the Planning Commission, reported that "a commercial center is less appropriate here than at Greenspring Avenue". He also said: "In the light of recent land use studies, I think it would be advisable for further careful analysis to be made of this whole plat prior to any such

extensive rezoning as is proposed in the present petition." Aside from a general statement that the reclassification "would not be detrimental to the health, safety, and general welfare of the community", and a statement that "there are communities around the subject property that are growing rapidly and being developed with cottage-type residences, which in time will require certain limited neighborhood shopping facilities", there were no findings of fact. As indicated in *Zinn v. Board of Zoning Appeals of Baltimore County,* just decided, this falls short of a finding either that the original classification was erroneous or that there has been a genuine change in conditions of such a character as to justify reclassification. We think the order must be reversed.

*Order reversed, costs to be paid by the appellants.*