HELFRICH, ᴇᴛ ᴀʟ. *v.* MONGELLI, ᴇᴛ ᴀʟ.

[No. 26, September Term, 1967.]

*Decided January 18, 1968.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, McWILLIAMS and FINAN, JJ.

*W. Lee Thomas,* with whom were *Royston, Mueller, Thomas & McLean* on the brief, for appellants.

*A. Owen Hennegan, Jr.,* for appellees.

FINAN, J., delivered the opinion of the Court.

The subject property in this zoning appeal consists of less than one acre, fronting on the north side of Frederick Road at Overhill Road, in the First Election District of Baltimore County. In April of 1959 appellees purchased the subject property along with a larger tract adjacent on the north. Subsequent to the purchase, hearings were held by the County Planning Board and the County Council prior to adoption of a comprehensive zoning map for the First Election District. During this time appellees requested and received R-A (Residence, apartments) classification for the larger tract. As to the small corner property appellees made no such request and it was classified R-6 (One and two-family residential). After the comprehensive map took effect in 1960, appellees sold the R-A zoned land and it was later developed into garden-type apartments.

In 1965 appellees petitioned for reclassification of the subject property from R-6 to R-A, with a special exception for the construction of a two story professional office building, which was to be architecturally in conformity with the adjacent apartment units. The application was granted by the deputy zoning commissioner, and the County Board of Appeals affirmed this de-

cision, finding evidence of both original error and substantial change. Protestants appealed to the Baltimore County Circuit Court, which rejected petitioners' arguments of confiscation and original error, but found that the evidence before the Board was sufficient to establish a fairly debatable issue of substantial change in the neighborhood. Accordingly, it affirmed the Board of Appeals.

As is customary with zoning appeals, the Court must now engage in the somewhat arduous task of creating a verbal reproduction of the "neighborhood," within which the subject parcel is situated. At the outset, it must be noted that at the time the comprehensive map was adopted in 1960, several nonconforming uses existed on both sides of the subject property, both north and south of Frederick Road, and to a large degree they are still in use.

Directly east of the property is a small grocery store, then several residences, including the residence-offices of an accounting and law practice, then an insurance agency, and a restaurant-tavern known as the Ridgeway Inn, and behind the Inn, a nursing home. Opposite the property is an attractive and well kept animal hospital attached to the veterinarian's home.

Going west from the property, on the northwest corner of Frederick and Overhill Roads, is a cottage in state of disrepair, and west of that a large residence and an outbuilding used for light manufacturing. On the south side of Frederick Road are located several detached residences and further west the Five Oaks Swimming Pool, which at the time of the map adoption in 1960 was a nonconforming public pool, but subsequently became a private club. West of the pool is a restaurant, the Candle Light Lodge.

With one exception, all of the aforementioned uses lie on land zoned R-6 or R-10. The nursing home is situated on R-A land, however, it is a permitted special exception. The Ridgeway Inn, Candle Light Lodge, insurance office, manufacturing building and grocery store were all existing nonconforming uses, although testimony revealed that the insurance office has closed down. The professional offices-dwelling is a permitted use in a residential zone, and the animal hospital is a permitted special

exception to an R-10 zone. The only additions to the described uses existing in 1960 were a 1963 special exception and variance for the improvement of the nursing home and a 1960 special exception to enclose an existing porch on Ridegway Inn.

The issues before the court below were threefold: (1) Was there a mistake in the original zoning of the subject tract when the comprehensive zoning map was adopted by the Baltimore County Council on April 5, 1960? (2) Has there been a change in the neighborhood sufficient to justify a zoning reclassification from R-6 to R-A? (3) Does the existing R-6 zoning classification so deprive the appellees of the use of their property as to amount to confiscation?

We have no difficulty in agreeing with the lower court's findings on the first issue that there was no mistake in the Comprehensive Zoning Map of 1960, and on the third issue to the effect that the existing classification does not amount to confiscation of the subject property. However, on the second issue of change in the character of the neighborhood, we think the lower court was in error and should be reversed.

We will first discuss issues one and three involving original error and confiscation, both of which the lower court correctly answered in the negative.

### Error

Judge Menchine, in his opinion in the court below stated:

"This Court finds that there is not a scintilla of evidence to support the conclusion of the Board that the R6 zoning applied to the subject tract was the product of a legislative error. The testimony makes it quite clear that R6 classification was applied to the subject tract and to extensive frontage on both sides of Frederick Road; that the classification included a number of non-conforming commercial uses, with an intent and purpose to maintain residential status in the area free from threat of further commercial exploitation. It is clear that this intentional legislative course had achieved its purpose, in that all development occurred within the constraints imposed by the compre-

hensive zoning and all attempts to change zoning in the area have been unsuccessful." [1]

We agree with the lower court's finding that there was no error in the Comprehensive Zoning Map of 1960.

## Confiscation

The appellees purchased the subject property for the purchase price of $11,000 in 1960. Appellees' own witness testified that the property, if sold for development for residential purposes under the R-6 classification, should reasonably be expected to bring from $7,500 to $9,000. Other witnesses quoted estimates under R-6 classification from $16,000 to $19,000. These values are a far cry from confiscation.

The rear of the subject property is inflicted with a substantial flood plain which creates a drainage problem. At the hearing before the Board of Appeals, appellees produced a registered engineer who testified as an expert that before the property could be subdivided into three lots, the county would require extensive drainage improvements. Together with other expenses such as dedication of a roadway and construction of gutter and curbs, the appellees would thus be forced to expend an estimated $10,500 in engineering costs for less than one acre of residential land. For this reason, appellees contend that the Board would have been guilty of confiscation had it prevented the reclassification to R-A.

Undoubtedly, the appellees would enjoy a greater economic gain from the sale or use of the property under an R-A classification; however, this Court has repeatedly held that the fact that rezoning may result in the realization of greater profits

1. On many occasions this Court has stressed the onerous burden of proof on one seeking a zoning reclassification and the strong presumption of correctness favoring original zoning and comprehensive rezoning. See Agneslane, Inc. v. Lucas, 247 Md. 612, 618, 233 A. 2d 757, 760 (1967); Mack v. Crandell, 244 Md. 193, 233 A. 2d 248 (1966); Pallace v. Inter City Land Co., 239 Md. 549, 212 A. 2d 262 (1965); Pahl v. County Board of Appeals, 237 Md. 294, 206 A. 2d 245 (1965); Montgomery County v. Ertter, 233 Md. 414, 197 A. 2d 135 (1964); Shadynook Improvement Assoc. v. Malloy, 232 Md. 265, 269, 192 A. 2d 502, 504 (1963); Kracke v. Weinberg, 197 Md. 339, 347, 79 A. 2d 387, 391 (1951).

from use of the land or that hardship may follow from the retention of the existing classification is not sufficient justification for rezoning. See *Agneslane, Inc. v. Lucas,* 247 Md. 612, 614, 233 A. 2d 757 (1967); *Board of County Commissioners v. Kay,* 240 Md. 690, 695, 215 A. 2d 206, 208 (1965); *Board of County Comm. of Prince George's County v. Edmonds,* 240 Md. 680, 689, 215 A. 2d 209 (1965); *Baltimore City v. Borinsky,* 239 Md. 611, 622, 212 A. 2d 508, 514 (1965); *Reiskin v. Montgomery County Council,* 229 Md. 142, 146, 182 A. 2d 34 (1962).

## Change

The lower court found sufficient evidence of change in the neighborhood in which the subject property is located to make the question of change of character of the neighborhood "fairly debatable"[2] and thus did not disturb the Board's reclassification from R-6 to R-A. We think that finding should be reversed. The lower court indicated that the following changes had occurred in the neighborhood since the adoption of the Comprehensive Zoning Map of 1960: (1) the widening of Frederick Road; (2) changes in the already nonconforming Ridgeway Inn; (3) the development of the Baltimore campus of the University of Maryland; (4) the development of Catonsville Community College and (5) the acquisition by the Board of Education of the Kerr property for use as an elementary school.

The record shows that the widening of Frederick Road stopped about 200 feet from the subject property and that where it was widened it consisted of increasing the width from approximately 33 feet to 48 feet under a public works agreement. In addition, there was testimony that the State Roads Commission had plans for widening the road to 66 feet from the Bal-

2. This Court has repeatedly held that if a zoning body has before it sufficient evidence of change in a neighborhood as to make the question of the change of character of the neighborhood fairly debatable, the finding of the zoning body will not be disturbed. See Agneslane, Inc. v. Lucas, 247 Md. 612, 619, 233 A. 2d 757 (1967); Ragan v. Hildesheim, 247 Md. 609, 612, 233 A. 2d 761, 763 (1967); Board v. Turf Valley, 247 Md. 556, 233 A. 2d 753 (1967); Bosley v. Hospital, 246 Md. 197, 227 A. 2d 746 (1967); Finney v. Halle, 241 Md. 224, 236, 216 A. 2d 530, 536 (1966).

timore City line to Ellicott City but there was also evidence that no one knew when funds might become available for this project.

Certainly the improvements to Frederick Road do not significantly, alter the basic character of the neighborhood as did the vast improvements to Stevenson Lane in *Jobar Corp. v. Rodgers Forge*, 236 Md. 106, 202 A. 2d 612 (1964). In *Jobar*, prior to the comprehensive map adoption in 1955, Stevenson Lane was a partially private 12 to 15 foot roadway, connected neither to York Road nor Bellona Avenue. In fact, it did not even exist in front of the subject property. At the time of the application in 1961, however, the road had become fully paved, extended from York Road to Charles Street and provided a 70 to 80 foot right-of-way. Conversely, the mere widening of an already existing paved thoroughfare, as in the instant case, does not of itself constitute a basic change in the character of the neighborhood.

The changes in Ridgeway Inn, an already nonconforming use, consisted primarily of enclosing the porch. This amounts to no more than a permissible intensification of an existing nonconforming use [3] and hardly amounts to a change that would affect the character of the neighborhood.

There is nothing whatsoever in the record to show the proximity, if any, of the subject property or the neighborhood in which it is situated, to the Baltimore campus of the University of Maryland or to Catonsville Community College, other than that they are in the general area.

The Kerr tract, condemned for the construction of an elementary school, is identified as being within two blocks of the subject property. We presume this means more than one block away and not more than two. The contention raised by the appellees that the construction of an elementary school will constitute a change affecting the character of the neighborhood is answered by the fact that schools constitute a permissive use under § 200.3 and § 200.6 of the Baltimore County Zoning

---

3. Kent County v. Abel, 246 Md. 395, 405, 228 A. 2d 247 (1967); Jahnigen v. Staley, 245 Md. 130, 225 A. 2d 277 (1967).

Regulations. *Cf. Baker v. Montgomery County,* 241 Md. 178, 185, 215 A. 2d 831, 835 (1966).

Certainly, the record, insofar as the location of the last three mentioned institutional uses are concerned, falls far short of the changes occasioned by the institutional uses found in *Meginniss v. Sheppard-Pratt,* 246 Md. 704, 229 A. 2d 417 (1967), wherein the Towson State College property was across the street from the subject property and The Greater Baltimore Medical Center almost directly south.

There is little to persuade us in the recounting of the number of nonconforming commercial uses in the neighborhood. The fact that they were in existence prior to the adoption of the Comprehensive Zoning Plan of 1960 would indicate a legislative intent to maintain the residential character of the neighborhood free from further commercial encroachment. The philosophy of zoning supports the theory that nonconforming uses will gradually be eliminated and not conversely that the neighborhood will eventually succumb to nonconforming domination. See *Baltimore v. N.A.A.C.P.,* 221 Md. 329, 157 A. 2d 433 (1960) ; *Grant v. City of Baltimore,* 212 Md. 301, 129 A. 2d 363 (1957) ; *Schiff v. Board of Zoning Appeals,* 207 Md. 365, 114 A. 2d 644 (1955) ; 2 Metzenbaum, *Law of Zoning* Ch. X-g (2d ed. 1955).

Appellees' witness, Mr. Gavrellis, replying to a question concerning change in the neighborhood stated :

"My recollection, without referring to a map, * * *, is that all development has occurred within the constraints imposed by the zoning map, and that several attempts to change the zoning have not been successful."

This would indicate that there have been only such changes in the subject area as were anticipated by those who enacted the comprehensive plan. See *County Council v. Gendleman,* 227 Md. 491, 177 A. 2d 687 (1962) ; *Serio v. City of Baltimore,* 208 Md. 545, 119 A. 2d 387 (1956).

We are of the opinion that the record in this case is so lacking in evidence of change affecting the character of the neighborhood as to render the question not "fairly debatable" and

506

that the lower court was in error in affirming the decision of the Board granting reclassification.

*Order reversed, appellees to pay costs.*