## GERMENKO *v.* COUNTY BOARD OF APPEALS OF BALTIMORE COUNTY

[No. 325, September Term, 1969.]

*Decided May 6, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN and SINGLEY, JJ.

*J. Francis Ford* for appellant.

No brief filed on behalf of appellee.

SINGLEY, J., delivered the opinion of the Court.

Germenko is the owner of an unimproved wedge-shaped half acre lot in Baltimore County, having a frontage of some 300 feet on the south side of Hollins Ferry Road with a depth of about 110 feet on its easternmost boundary and of about 20 feet on its westernmost boundary. When zoning map 2A for the Lansdowne-Arbutus area of the County was adopted on 2 June 1959, the lot was classified R-6 (one family residential, minimum lot size 6,000 square feet).

Because he believed the development of the lot for residential purposes was not economically feasible, Germenko filed with the Baltimore County Zoning Commissioner an application for the reclassification of the lot as B-L (business, local) so that it could be used as a site for a small carry-out restaurant. The application was denied by the Zoning Commissioner and the denial was affirmed by the County's Board of Appeals. This appeal is from an order of the Circuit Court for Baltimore County affirming the action of the Board of Appeals.

Germenko pins his hopes on the change-mistake rule in support of the relief which he seeks. We said of piecemeal zoning in *Wells v. Pierpont,* 253 Md. 554, 557, 253 A. 2d 749 (1969) :

"It is now firmly established that there is a strong presumption of the correctness of original zoning and of comprehensive rezoning, and that to sustain a piecemeal change therefrom there must be produced strong evidence of mistake in the original zoning or comprehensive rezoning or else evidence of substantial change in the character of the neighborhood [citing cases]. And, of course, the burden of proof facing one seeking a zoning reclassification is quite onerous."

At the hearing before the Board, Germenko's expert witness testified about changes in the area. The Germenko property lies about 600 feet west of the intersection of Hollins Ferry Road and Hammonds Ferry Road. The witness testified that in November of 1964, a lot in the southwest quadrant of the intersection, zoned R-6, was reclassified B-L (business, local) with a special exception for an automobile service station. A part of this property is now improved by a filling station; the rest is vacant. While this lot is adjacent to Germenko's, it is separated from it by a storm drainage reservation, about 50 feet wide at Hollins Ferry Road and 100 feet at the rear lot line.

There was further testimony that in May of 1965 a lot in the northeast quadrant of the intersection, zoned R-6, had been reclassified B-L, with a special exception for an automobile service station. It is now the site of a filling station and a farm store.

Four other changes relied on by Germenko's witness involved reclassification of properties from one and one-half to three blocks distant from Germenko's. The first two, in January, 1964, involved a reclassification from R-6 to B-L and R-A (residence, apartments). Two others

in 1965 and 1966 reclassified R-6 property as R-A in one instance, and as M-L (manufacturing, light) in the other. None of these four properties had been improved at the time of the hearing before the Board.

The weakness of Germenko's reliance on change is that while changes in conditions may justify a reclassification, they do not necessarily compel it, *Skipjack Cove Marina, Inc. v. County Comm'rs for Cecil County*, 252 Md. 440, 453, 250 A. 2d 260 (1969) and cases there cited, nor does the rezoning of abutting property always warrant the rezoning of adjacent property. *Wahler v. Montgomery County Council*, 249 Md. 62, 67, 238 A. 2d 266 (1968); *Baker v. Montgomery County Council*, 241 Md. 178, 185, 215 A. 2d 831 (1966). See also *Brown v. Wimpress*, 250 Md. 200, 242 A. 2d 157 (1968). The issue was a debatable one, within the province of the Board.

The property owner's second argument, that his lot was mistakenly zoned R-6, because it cannot be economically developed for residential purposes, is even less persuasive. Germenko's rear lot line abuts on the rear lot line of houses on Research Avenue, some 100 feet to the south. These are relatively new (one witness said that he had purchased his house new in 1955), well maintained, single family residences which sell for about $10,000. Whether all of them had been built at the time of the adoption of the 1959 zoning map is not clear from the record, but what is clear is that the neighborhood from south of Research Avenue northeast to the Baltimore City line was predominantly residential at that time.

Germenko makes much of the fact that the physical characteristics of his lot make it unsuitable for residential development. That it is not an attractive location cannot be denied. Hollins Ferry Road is a dual highway, 120 feet wide, used daily by 7,000 cars, and access to the Germenko lot can only be had from the eastbound lane. The terrain of Germenko's property is rough, and lies below the level of Hollins Ferry Road—at the west end, some three feet; at the east end, some seven feet below—so that considerable filling (one witness estimated that 3,000

cubic yards would bring the lot within two feet of the grade of the road) would be required. Across Hollins Ferry Road from Germenko's lot is a trailer park. There is more than a suggestion in the record that Hollins Ferry Road may have been rebuilt or extended at some time in the recent past, but before Germenko purchased the property, possibly to provide access to Exit 9 of the Baltimore Beltway, which crosses Hollins Ferry Road about 230 feet to the east of the Germenko property. This may well account for the shape and level of the lot.

But the contention that it was not economically feasible to develop the property for residential purposes was laid to rest by Germenko's own expert witness, James S. Spamer, a civil engineer, who testified on redirect examination:

"Q. Mr. Spamer, in your opinion, if this property were to be used for residential purposes in view of the cost of fill, and one thing or another, would it be practical to erect residential properties on there? A. With the cost of the Public Works Agreement in the form of service area connection charges, for the extension of water from mains that exist, immediately available, and the grading, [I] come up with a lot cost that exceeds $2,000 for each of the proposed, or each of the possible two-lot yield.

"What I am saying is this, this tract can and will only yield two,—R-6 lots.

"Q. The $2,000 that you speak of is over and above the land cost? A. Oh, yes, this would be strictly engineering responsibility, under a Public Works Agreement.

"Q. $2,000 a lot? A. Yes, sir.

"Q. (By Mr. Slowik) [Acting Chairman of the Board of Appeals] What would be a normal development cost for developing an R-6 lot? $2,000 is certainly not excessive, is it? A. No, for an R-6 lot, even though water and sewer would

be immediately available, $2,000 is about the average today.

"Q. (By Mr. Ford) Over and above the land cost? A. Over and above the land cost, yes, sir. That would be Public Works cost."

In our view, it was this testimony which disposed of the contention that the existing classification deprived Germenko of all reasonable use of his property, compare *City of Baltimore v. Cohn,* 204 Md. 523, 530, 105 A. 2d 482 (1954). We have repeatedly stated that it is not the function of the courts to zone or rezone, and that courts will not substitute their judgment for the expertise of zoning officials. Only when there is no room for reasonable debate or where the record is devoid of substantial supporting facts are the courts justified in reversing a decision of an administrative body or in declaring its action arbitrary, capricious or illegal. *Minor v. Shifflett,* 252 Md. 158, 249 A. 2d 159 (1969) ; *France v. Shapiro,* 248 Md. 335, 236 A. 2d 726 (1968) ; *The Jobar Corp. v. Rodgers Forge Community Ass'n,* 236 Md. 106, 120, 202 A. 2d 612 (1964).

Germenko testified that he had purchased the property three years before the zoning case, knowing that it was classified R-6; that he was a real estate investor, specializing in "commercial free-standing locations"; and that he had bought with the idea of having it rezoned. That he will not be able to achieve this is unfortunate, but we have repeatedly held that neither the fact that rezoning may result in a more profitable use of land nor that hardship may follow the retention of an existing classification is sufficient justification for rezoning. *Brenbrook Constr. Co. v. Dahne,* 254 Md. 443, 450, 255 A. 2d 32 (1969) ; *Helfrich v. Mongelli,* 248 Md. 498, 502-03, 237 A. 2d 454 (1968).

*Order affirmed, costs to be paid by appellant.*