YEWELL ET UX. *v.* BOARD OF COUNTY COM-
MISSIONERS FOR PRINCE GEORGE'S
COUNTY

[No. 149, September Term, 1970.]

*Decided December 9, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SINGLEY and SMITH, JJ.

*Thomas B. Yewell* for appellants.

*Emil A. Nichols, Associate County Attorney,* with whom were *Lionell M. Lockhart, County Attorney,* and *Harry L. Durity, Deputy County Attorney,* on the brief, for appellee.

BARNES, J., delivered the opinion of the Court.

In this zoning appeal, the Board of County Commissioners for Prince George's County, sitting as a District Council (District Council), the appellee and respondent below, declined to grant the application of the appellants, Thomas B. Yewell and Madge S. Yewell, his wife, to rezone their 10 acre tract of land in the Eleventh Election District of Prince George's County from the R-R (Rural-Residential) zone to the C-2 (General Commercial) zone. On appeal to the Circuit Court for Prince George's County (Bowie, J.), the action of the District Council was affirmed and the petition of the Yewells dismissed by its order of March 20, 1970. A timely appeal from that order was filed to this Court. We shall affirm the order of the circuit court.

The subject property consists of 10 acres of land located on the west side of Frank Tippett Road at its in-

tersection with Rosaryville Road in Prince George's County approximately 6,000 feet southeast of Woodyard Road. Its easterly line runs in the center of Frank Tippett Road, with a frontage on that road of approximately 732 feet. This easterly line runs to the intersection of Frank Tippett Road and Rosaryville Road. The northerly boundary line of the subject property begins at this intersection and runs westerly for approximately 705 feet. The westerly boundary line is an irregular one of approximately 390 feet and the southerly boundary line is approximately 825 feet long ending at Frank Tippett Road.

The subject property is improved by a substantial single-family house in the eastern portion; the balance of the tract is vacant and wooded. Abutting the subject property to the north is a large single-family dwelling on a wooded parcel of land in the R-R zone and beyond that is a detached, single-family development known as Williamsburg Estates in the old R-R zone. Land to the east of the subject property is in the R-R zone and is vacant and wooded, followed by scattered single-family dwellings also in the R-R zone along the east side of Rosaryville Road. Land to the south and west is in the R-R zone. To the south of the subject tract the land is wooded and followed by the Merrymount Horse Center; to the west, the land is wooded and vacant.

Approximately 3,000 feet southwest of the subject parcel are the Brookwood and Hollaway Estates, subdivisions consisting of detached single-family residences in the R-R zone.

The rezoning application was filed by the Yewells on July 22, 1968. The Technical Staff of The Maryland-National Capital Park and Planning Commission (Planning Commission) filed its Report on January 17, 1969, recommending denial of the requested C-2 rezoning or any other commercial zone with the suggestion that the subject property be retained in the R-R zone. The Technical Staff gave a full discussion in its Report, including the observation that to grant the requested commercial rezoning

"would be an intrusion of an incompatible commercial land use into a low density residential area" and that although the Technical Staff recognized that shopping centers will be needed as an adjunct to the growing residential development, the Technical Staff's support must be confined "to sites that are better suited for this purpose than the subject property." It gave three reasons for its recommended denial, as follows:

"1. Approval of the C-2 Zone for the subject parcel would permit an intrusion of intensive land use into an area marked by low density, detached, single-family residential land use thus constituting 'spot zoning' which could establish a precedent for future requests of a similar nature in this vicinity.

"2. Approval of a commercial zone for the subject parcel prior to the formulation of a local master plan or before residential development in this vicinity has reached a more advanced stage generating need for commercial zoning and land use is premature.

"3. Upon completion of the proposed Outer Beltway and widening of Rosaryville Road, access to the larger of the two remaining pieces of the subject parcel would be limited to 25± feet along Rosaryville Road; this is not sufficient for proper commercial use."

The Prince George's County Planning Board of the Planning Commission (Planning Board) on February 19, 1969, recommended disapproval of the requested rezoning, using the same three reasons for its recommendation as those given by the Technical Staff.

The hearing on the application was held on August 13, 1969, at which the applicants presented expert and other testimony. Their expert Ben Dyer, a well-qualified registered professional engineer, land surveyor and urban planner, testified that, in his opinion, there was a need

for the contemplated shopping center on the subject property generated by the substantial increase in residential development in the neighborhood of the property. Mr. Dyer outlined the general limits of the neighborhood, described the various residential subdivisions and number of lots in those subdivisions in the neighborhood, pointing out that many houses had been completed and sold while others were in the process of being built. He testified that he found it significant that a large water main had been installed by the Washington Suburban Sanitary Commission (Sanitary Commission) for the full length of Rosaryville Road in 1963-1964 subsequent to the last comprehensive rezoning in 1962. In addition, contracts were being let for bringing services to the various residential subdivisions in the neighborhood and the Sanitary Commission "is waiting and expects within the next month to have Federal money that will go toward the installation of that sewer." There have been road improvements since 1962. Frank Tippett Road has been improved by Prince George's County and the northern part of that road had been initially paved. It has been "straightened in the area where it passes through the west side of Brookwood and Hollaway Estates subdivisions, to change its alignment." Mr. Dyer also testified in regard to two prior reports of the Technical Staff in 1967 in connection with two prior applications (A-7214 and A-7284) for rezoning from the R-R zone to the C-2 zone in which the Technical Staff had recommended C-1 rezoning for portions of the respective tracts because of the need for shopping centers at those locations which are approximately a mile north and south, respectively, of the subject property. Mr. Dyer was of the opinion that an argument could be made that there was a mistake in the original comprehensive zoning in not providing for a planned development in the area which should have given some consideration for a neighborhood-type of shopping center in the area. He was also of the opinion that there had been sufficient change in the neighborhood to justify a rezoning inasmuch as part of "the need for the shopping center has been the

rapid growth of the community, the furnishing of water and sewer and the improvement of roads."

One of the Commissioners was concerned that the proposed Outer Beltway would pass through a substantial portion of the subject property. However, a letter from the State Roads Commission, dated May 12, 1969, was introduced into evidence which indicated that the Outer Beltway was "not in a currently authorized construction program." The letter further stated:

> "Based on current funding and the priority of other needs, it does not appear this project could move into an authorized program status until after 1974. When moved into a program status surveys, preliminary engineering, right-of-way acquisition and construction plans would have to be undertaken preliminary to any construction. Construction is thus unlikely for another eight years."

Mr. Dyer stated that in his opinion the location of the subject property was an excellent place for a shopping center.

Charles Maddox, a builder and developer, who had developed Estonian Estates, not far from the subject property, testified for the applicants. He stated that the proposed shopping center would be an asset and beneficial to the general community in the area, inasmuch as the nearest adequate shopping center was at Clinton some 10 miles away.

Other witnesses testified in favor of granting the application. Several adjacent or nearby property owners were present at the hearing; and it was indicated on their behalf that they would testify in opposition to the granting of the petition.

The District Council, on January 16, 1970, unanimously disapproved the application. It found that the subject property was comprehensively zoned in 1962; that the Master Plan of Highways showed that the proposed outer beltway bisected the subject property; that the zoning in

the area "is predominantly R-R and recent development in this category is indicated by plats recorded and subdivision growth in Brookwood, Hollaway, Williamsburg and Estonian Estates subdivisions"; that the land "immediately to the east, west, and south is largely undeveloped"; and, that "[t]he General Plan adopted in 1964 shows the subject parcel to be in an area proposed for a density of less than one dwelling unit per gross acre." The District Council's conclusion was that:

> "The applicant has not shown substantial evidence of change or mistake which justifies the granting of the requested zoning."

On appeal from this decision to the circuit court, Judge Bowie, after considering the testimony and exhibits as well as the memoranda and arguments of counsel, rendered an oral opinion in which he stated, *inter alia*, the following:

> "There isn't any question in the Court's mind but that there were other reasons as shown in the findings of fact duly filed in this case after it was remanded to the District Council for the findings of fact, that there were other reasons in addition to the proposed location of the outer beltway for the refusal of this petition.
>
> "Now, certainly we had the same District Council sitting on this case that sat on the Exhibit 1 project to the north there near Wood's Corner and the other one down near the Catholic Church near 301, on either end of Rosaryville Road. They had those petitions before them. Those locations at the time were perhaps even better suited than this one in period of time. But they were turned down.
>
> "This same District Council had before it the instant case, and even though it was a year and a half later, they felt that the area—and I can't say that they were arbitrary and capricious in

their finding of fact that the area was not yet ready. There were single-family dwellings, it is true, going up, but no other commercial area. They determined that perhaps the need was a little premature, and it may well be that they could be right. But whether this Court might say that we would agree or disagree, that isn't for us to say, if in fact a fairly debatable issue was created.

"I don't recall ever having a case any clearer where a fairly debatable issue was created. And I don't think that the entire case went on the fact that there was a contemplated beltway proposed here, because certainly in their findings of fact they give these other reasons which are submitted in the record and there is no need for the Court to repeat them; they have been repeated in the argument of both counsel."

We find no error in the conclusions of the lower court. The applicants contended below and before us that the action of the District Council in the present case was arbitrary and capricious, contending principally that the inconsistent recommendation of the Technical Staff in the two prior rezoning applications, already mentioned, indicate this as well as the emphasis given the bisecting of the subject property by the proposed Outer Beltway as and when constructed.

In our opinion, the matter before the District Council was fairly debatable, as the lower court found, and was not arbitrary and capricious. We have held that an adverse report of the Technical Staff and the Planning Board, if based on sufficient facts and reasons, is in itself sufficient to make the refusal of a rezoning petition fairly debatable. Compare *Spaid v. Board of County Commissioners*, 259 Md. 369, 269 A. 2d 797 (1970) and see cases cited therein.

On the other hand, the Legislative body is not obliged to accept the recommendations of the Technical Staff or

Planning Board. See *County Commissioners of Queen Anne's Co. v. Miles,* 246 Md. 355, 228 A. 2d 450 (1967); *Board of County Commissioners v. Edmonds,* 240 Md. 680, 215 A. 2d 209 (1965). See also *Richmond Corp. v. Board of County Commissioners for Prince George's Co.,* 254 Md. 244, 255 A. 2d 398 (1969).

The fact that the Technical Staff had recommended portions of land for C-1 rezoning approximately one mile from the subject property on two previous occasions did not mean that their recommended denial of C-2 rezoning of the subject property was arbitrary or capricious. The factual situations were different in the prior cases; and, in any event, the District Council *denied* the recommended rezoning to C-1 in the prior cases and *also denied* commercial rezoning in the present case. In short, the action of the District Council in all these cases is entirely consistent and *its action* is the one to be considered as possibly being arbitrary and capricious and not the action of the Technical Staff. See *George F. Becker Co. v. Jerns,* 230 Md. 541 at 546, 187 A. 2d 841, 844 (1963), wherein the Court stated: "It is not the function of the courts to zone or rezone but only to determine whether the *legislative body* has properly applied the law to the facts." (Emphasis added.)

The conclusion of the District Council is in accord with three decisions of this Court, all filed on November 18, 1970. See *Chapman v. Montgomery County Council,* 259 Md. 641, 271 A. 2d 156; *Cabin John Limited Partnership v. Montgomery County Council,* 259 Md. 661, 271 A. 2d 174; and *Hardesty v. Dunphy,* 259 Md. 718, 271 A. 2d 152, as well as *Wright v. McCubbin,* 260 Md. 11, 271 A. 2d 365 (1970).

Even if it be assumed for the purpose of the argument that there had been sufficient evidence of a mistake in the original zoning or a change in conditions which resulted in a change in the character of the neighborhood, it is well settled that although such evidence would *justify* the District Council in granting an application for rezoning, it does not *compel* the District Council to grant the

application. *Wier v. Witney Land Co.*, 257 Md. 600, 263 A. 2d 833 (1970). See also *Germenko v. County Board of Appeals of Baltimore County*, 257 Md. 706, 264 A. 2d 825 (1970) ; *Skipjack Cove Marina, Inc. v. County Commissioners for Cecil County*, 252 Md. 440, 250 A. 2d 260 (1969).

There were several factors other than the Outer Beltway problem which support the District Council's refusal to grant the requested rezoning as the lower court properly observed. Being fairly debatable, the Courts will not substitute their judgment for that of the District Council. *Messenger v. Board of County Commissioners for Prince George's County*, 259 Md. 693, 271 A. 2d 166 (1970), and prior Maryland cases therein cited.

> *Order of March 20, 1970, affirmed, the appellants to pay the costs.*